# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 14, 2012 Session

## IN RE: JADA C.H., a minor child

**Direct Appeal from the Juvenile Court for Shelby County**
**No. V8553     Curtis S. Person, Jr., Judge**

---

**No. W2011-02542-COA-R3-JV - Filed September 18, 2012**

---

This custody case arises from an agreed order of parentage. After Father's paternity was established, he filed a petition in juvenile court for custody of the child. At the conclusion of several hearings that took place over a span of years, the juvenile court entered an order naming Father primary residential parent and awarding Mother weekend parenting time. Mother appealed. While awaiting appeal, Mother filed a petition to have the child declared dependent and neglected. The Special Judge presiding over that petition transferred Mother's petition to Lake County, where Father and the child reside. In response to the allegations in Mother's petition, Father filed a petition for an injunction and to have Mother's future parenting time supervised. A different Special Judge granted Father's request without a full hearing, stating that Mother's parenting time would remain supervised until further orders of the court. No further orders were ever entered. We affirm the trial court's order naming Father primary residential parent, but vacate the transfer of Mother's petition to Lake County and the modification of Mother's parenting time. Affirmed in part, vacated in part, and remanded for further proceedings.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Shantell S. Suttle, Cordova, Tennessee, for the appellant, Tanyawa S.H.

Melinda Plass Jewell, Memphis, Tennessee, for the appellee, Joseph C.

# MEMORANDUM OPINION[1]

## I. Background

This custody case has a long and convoluted history. Joseph C. ("Father") and Tanyawa S. H. ("Mother) are the parents of Jada C.H. ("Jada" or "the child"),who was born on April 20, 2008. Father and Mother were never married.

On February 19, 2009, Father filed a Petition for Custody[2] of Jada in the Shelby County Juvenile Court. At the time of the petition, Father lived in Ridgely, Lake County, Tennessee, while Mother and the child resided in Memphis, Tennessee with Mother's three other children.[3] The petition alleged that Father was the biological parent of Jada and that it was in her best interest that he be granted custody. The petition was heard by Special Judge

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] We note that the legislature has seen fit to alter the language used by courts of this State with regard to custody decisions that occur as a result of divorce or separation. *See* Tenn. Code Ann. §36-6-401 *et. seq.* "As a result, traditional terms such as custody, visitation, custodial parent, and noncustodial parent have given way to new terms, *e.g.*, 'residential schedule, temporary and permanent parenting plans, primary residential parent, alternate residential parent, and parenting responsibilities.'" ***Malmquist v. Malmquist***, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *18 n.4 (Tenn. Ct. App. March 25, 2011) (citing Janet Leach Richards, Richards on Tennessee Family Law, § 8-2(e) (3d ed. 2008)). However, this case does not arise from a divorce or separation but from an agreed order of paternity. Thus, the new language of Tennessee Code Annotated Section 36-6-401 *et. seq.* does not apply. Rather, the traditional language regarding custody contained in Tennessee Code Annotated Section 36-6-106 *et. seq.* applies to the facts of this case. The Juvenile Court in this case used both the Tennessee Code Annotated Section 36-6-401 term "primary residential parent" and the Tennessee Code Annotated Section 36-6-106 term "custody" in making its decision that Father should have primary responsibility for the child. In addition, the trial court used both the Tennessee Code Annotated Section 36-6-106 term "visitation" and the Tennessee Code Annotated Section 36-6-401 term "parenting time" to refer to Mother's weekend time with the child. "The juvenile court may incorporate any part of the parenting plan process in any matter that the court deems appropriate." Tenn. Code Ann. § 36-6-41. For purposes of this appeal, the terms are interchangeable, but we will primarily rely on the more "user-friendly language" of Tennessee Code Annotated Section 36-6-401 *et seq.* ***Malmquist***, 2011 WL 1087206, at *18 n.4.

[3]Father is not the biological or legal parent of these children and they are not the subject of this appeal.

Dan H. Michael, who recommended that the petition be dismissed because Father had not been established as the legal or biological father of Jada. The Juvenile Court Judge confirmed the findings on June 11, 2009.[4] On the same day, Father filed a request for a hearing before the Juvenile Court Judge, who granted the request. On June 18, 2009, Father also filed a Motion to Alter or Amend the Special Judge's recommendation that the petition for custody be dismissed, arguing that he had previously submitted to a paternity test, which indicated that he was the biological father, although no order had yet been entered confirming that finding. Father attached, to his motion, the paternity test, and also submitted proof that he had previously petitioned the Court to enter an agreed order of paternity, but that no action had ever been taken on that petition. On June 18, 2009, the Special Judge granted the motion to alter or amend the prior dismissal and awarded Father temporary weekend parenting time, pending a final child support and custody determination.

On August 25, 2009, Father filed a petition to prevent Mother from leaving the jurisdiction with the child, citing comments allegedly made by Mother that she intended to relocate to Florida. Later, on September 21, 2009, Father filed a petition, seeking to hold Mother in contempt for failing to comply with Father's court-ordered parenting time. On October 8, 2009, the Special Judge entered an order continuing the case until October 15, 2009 due to allegations of dependency and neglect that were adduced at the hearing on the various pending petitions. The order further stated that Father was to be named the primary residential parent and that the parties should have joint custody of the child. A guardian *ad litem* was subsequently appointed for the child,[5] and an attorney was appointed for Mother.

The case reconvened for a hearing and the Special Judge entered an order on October 22, 2009 again continuing the case until November 18, 2009. The October 22, 2009 order

---

[4] Shelby County has one Juvenile Judge. To deal with the number of cases before it in a timely manner, the Shelby County Juvenile Court has implemented a system where Special Judges hear cases and make recommendations to the Juvenile Court Judge. Special Judges are defined as " officer[s] of the judicial system under the judge's supervision whose duty it is to perform judicial function[s]." Tenn. Code Ann. §17-2-122(b). After the Special Judge makes recommendations, the Juvenile Court Judge confirms the recommendations as the order of the court. The parties may seek rehearing of an adverse ruling before the Juvenile Court Judge. In some cases, however, when the Juvenile Court Judge finds it necessary to be absent from holding court, the Special Judge sits as the Juvenile Court Judge. *See* Tenn. Code Ann. §17-2-122(a–b). In those situations, the Special Judge's rulings are the orders of the court without the need for confirmation and no rehearing before the Juvenile Court Judge is permitted. Unless otherwise noted, all recommendations by the Special Judge in this case were subsequently confirmed by the Juvenile Court Judge. No issue has been raised regarding the propriety of this procedure.

[5] The initial guardian *ad litem* appointed to this case withdrew and a new guardian *ad litem* was appointed. Ultimately, three separate guardians *ad litems* have been appointed to this case, as well as one Court Appointed Special Advocate.

also named Mother as the primary residential parent, temporarily set Father's parenting time, and ordered the parties to submit to hair follicle tests. The Special Judge continued the case on January 21, 2010, setting trial in this matter for March 25, 2010.

In the intervening time, Father filed several motions, including a motion to modify the way in which the child was exchanged by the parties and a motion for the parties to submit to a psychological evaluation and a custodial evaluation, and to take the child on vacation. These motions were granted.

The parties were later ordered to mediate; however those efforts were ultimately unsuccessful. The parties were further order to submit to therapeutic sessions and counseling with the child at the Exchange Club. The case reconvened and was continued several more times.

On August 6, 2011, while Father was exercising parenting time with the child, he learned of allegations that Mother, or her boyfriend, used a belt to beat Mother's oldest daughter. Accordingly, Father, without his attorney, sought a protective custody order in the Lake County Juvenile Court. The Lake County Juvenile Court granted Father custody for thirty (30) days, pending transfer to, and full adjudication by, the Shelby County Juvenile Court. To this end, the petition was subsequently transferred to Shelby County. On August 18, 2011, Father filed a Petition for Dependency and Neglect in the Shelby County Juvenile Court, alleging that the child was not safe in Mother's home due to allegations of altercations between Mother, her boyfriend, and the children.

The Special Judge, sitting as the Juvenile Judge, held a final hearing on August 24, 2011 on both Father's petition for custody and his allegation that the child was dependent and neglected. [6] Both parents, several police officers who witnessed the exchanges of the child at the Millington Police Station, and Dr. Collins from the Exchange Club testified.

---

[6] Although the parties agree that the trial court took evidence on several prior dates and then continued the case for resolution at a later time, the only transcript contained in the record on appeal is from August 24, 2011. Indeed, after Mother filed the transcripts with this Court, Father filed a motion seeking to supplement the record with transcripts from earlier hearings that took place on October 9, 2009, June 23, 2009 and October 27, 2009. In addition, Father sought to supplement the record with a total of sixteen (16) exhibits entered throughout the proceedings, including a report from the Exchange Club containing the custodial evaluation and various emails between the parties. This Court denied the motion to supplement due to Father's failure to comply with Rule 22(a) of the Tennessee Rules of Appellate Procedure in that the motion was not accompanied by a memorandum of law and by an affidavit, nor does the motion specify the efforts to contact adverse counsel. The Court emphasized, however, that the denial of the motion should not be construed as preventing Father from filing a properly supported motion that fully complies with the applicable rules. Father did not file any further motions seeking to supplement the record.

Specifically, both the police officers and Dr. Collins testified that they observed Mother become very hostile and angry regarding Father's parenting time with the child. In addition, Dr. Collins recommended that Father be named the primary residential parent due to Mother's anger issues and her problems with her other children, including an incident where police became involved over the alleged beating of the older child with a belt, and an incident where the older child physically assaulted one of Mother's younger children. At the conclusion of testimony, the trial court made oral findings of fact and conclusions of law, stating:

> We came today for trial on the underlying orders and petitions, and having heard the testimony of the witnesses, this Court makes the following findings:
>
> The Court notes that Dr. Collins, its expert, stated that any further work with these parents was fruitless, and that's disturbing. I'm not a psychologist; I'm a trained lawyer and a judge and it's not my job to straighten out parents. That's why we've wasted the last two years with you folks in counseling. And now I have my expert coming in and saying anything else is fruitless.
>
> For the last two years, this child has been in the joint custody of the parents with the father having parenting time every weekend. Mother complains she hasn't talked to the child since he got his protective custody order out of Lake County, yet, then she turns around and says she's not going to call up there and talk to the child. She brought that on herself.
>
> The mother has a criminal history. She has four children by three men one of who[m] is in prison; the other one has been in prison neither of which have any contact with their children. For what reason I'm not certain but they don't. She testified to that.
>
> It's clear from the record that the mother's honesty is in question. In fact, I find her testimony incredible. She's not telling the truth about why [] she failed to enroll her other three children, her school-age children, in school on time. [The oldest daughter] was not enrolled in city schools even though she lived in the city. She claims she's now enrolled in the Millington School System but offers no proof other than her testimony which is incredible; [one child] missed the first twelve days; [the other child] missed the second twelve days; of course, Jada is

too young to go to school.

Mom's house is one of turmoil. There's no doubt about that. Her problems with [the oldest daughter] have spilled over to her problems with her other children. She's now got another man in her life, . . . who's not a father to any of these children but testimony that is clearly credible indicates he's taken a role as a parent with [the oldest daughter] to the effect of probably assaulting her with a weapon.

Mom is hostile and she's secretive; she won't give dad the phone numbers; she won't tell him where she lives until today's hearing; she complains it's because of him that she's secretive yet, there's no proof whatsoever it's his fault. She admits to being just as ugly to him as he has been to her, and I have proof from both sides that you've both been absolute children about this.

I'm real disturbed of mom's rejection of compromise and there's ample proof in the record that she's always opposed to compromise. This Court had to lay down an order early on in this case granting the father vacation time with his young daughter because the mother objected.

I have Dr. Collins' testimony that, when they tried to arrange a parenting schedule that was fair to both parents, mom refused to compromise. Now she comes in and says I'll do whatever I can. It's always easier to make up your mind at trial than it is when you're not being looked at.

Having heard the proof, the Court finds that there is no dependency and neglect of Jada but that Court clearly finds that the mother—and, between the mother and father, that the father is the more fit custodian of the child and that it is in Jada's best interest that he be the primary residential parent.

Having considered all conditions in Title 36 when it comes to custody, the Court makes a specific finding that the mother's actions show that she will not cooperate with counseling nor will she cooperate with this Court in making sure that Jada's relationship with her father is fostered on a regular and loving basis. In fact, from the history with her other children and the Court's view in this case over the years, she will do whatever she can to frustrate the relationship.

Having made the findings of fact conclusions of law in this matter, the Court finds that the father's home is appropriate

for primary custody. The Court awards joint custody to the parents. The father shall be primary residential custodian. Parenting time with the mother shall be the first, third, and fifth weekend of ever month beginning at ... six p.m. Friday to six p.m. Sunday. The holidays will be laid out in the order per our standard parenting order here at juvenile court.

And upon conclusion of this cause, if it's not appealed to the court of appeals on a timely manner, within one year, all jurisdiction shall be transferred to Lake County for any future proceedings.

The Court further ordered that the child would be exchanged at a point halfway between Mother and Father's home and that Father's wife could be present at all exchanges. An order was entered memorializing the Special Judge's oral findings on September 1, 2011.

Mother filed a timely appeal to this Court. However, before appellate briefs were filed, on November 14, 2011, Mother filed a Petition for Dependency and Neglect in the Shelby County Juvenile Court, seeking sole custody of the child due to allegations that Father and his wife had inappropriate sexual contact with the child. Mother filed an amended petition on November 23, 2011.[7] This petition was filed under a different docket number than the original case and was apparently assigned to a different Special Judge.

In response to what Father considered Mother's unfounded allegations, Father filed a sworn Petition for Supervised Visitation, Injunctive Relief, Modification of Visitation and Custody and Contempt of Court on November 23, 2011. The petition alleged that Mother's attempts to regain custody of the child, by making unfounded allegations of sexual abuse, had a detrimental effect on the child. Accordingly, Father asked that all future parenting time with Mother be supervised.

Around November 28, 2011, the parties convened before the Special Judge. Based on Father's oral motion and the trial court's own *sua sponte* motion, the Special Judge entered an order transferring Mother's petition for dependency and neglect to Lake County pursuant to Tennessee Code Annotated Section 37-1-112(a), discussed in detail below. Although Father's attorney asserts that the Special Judge conducted a hearing on this date, there is no transcript or statement of the evidence contained in the record. The record on appeal does not contain any documents evidencing the resolution of Mother's petition in Lake County.

---

[7] Mother attached a signed affidavit to her November 14 petition asserting that the allegations contained therein were true to the best of her knowledge. However, only Mother's attorney signed the affidavit attached to the amended petition.

Mother filed another timely notice of appeal of the Special Judge's transfer of her petition to Lake County.

On December 1, 2011, the original Special Judge entered an order on Father's petition for Supervised Visitation, Injunctive Relief, Modification of Visitation and Custody and Contempt of Court. This order, which is included in our record, modified Mother's visitation privileges and ordered that Mother's parenting time would be supervised by the Exchange Club. No transcript of any evidence taken during this proceeding is included in the record. In addition nothing in the record indicates that any further orders were entered in this case.

## II. Issues

Mother raises the following issues, which we restate:

1. Whether the trial court erred in finding that Father is the most fit custodian?

2. Whether the trial court erred in finding that it was in the child's best interest for Father to be named primary residential parent?

3. Whether the trial court erred in finding that Mother's dependency and neglect petition should be transferred to Lake County?

4. Whether the trial court erred by finding that there was a material change in circumstances to justify modifying Mother's parenting time so that it is supervised?

5. Whether the trial court erred in finding that it was in the child's best interest to modify Mother's parenting time?

## I. Analysis

### A. Primary Residential Parent

We first consider whether the trial court erred in finding that Father was the more fit custodian and that the child's best interests were served by naming Father the primary residential parent. Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). In applying the *de novo* standard, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905,

at \*3 (Tenn. Ct. App. Oct.12, 2010) (citing **Johnson v. Johnson**, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." **Hyde**, 2010 WL 4024905, at \*3 (citing **Johnson**, 169 S.W.3d at 645). In addition, "[i]f the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." **Heffington v. Heffington**, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

Custody proceedings in juvenile court that arise out of an agreed order of paternity are governed by Tennessee Code Annotated Section 36-6-106. Tennessee Code Annotated Section 36-6-106 requires the court to take into account a number of factors regarding the best interests of the child in deciding which parent should be designated the primary residential parent. Among the factors at issue in this case are: (1) the "stability of the family unit," Tenn. Code Ann. §36-6-106(a)(4); (2) the "character and behavior of any other person who resides in or frequents the home of a parent," Tenn. Code Ann. §36-6-106(a)(9); and (3) each parents' "willingness and ability . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents." Tenn. Code Ann. §36-6-106(a)(10).

Our review in this case is hindered by Mother's failure to file all of the transcripts of the proceedings before the trial court in this Court. As Mother is the appellant in this case, it is her burden to provide this Court with a fair, accurate, and complete account of what transpired in the trial court. **In re M.L.D.**, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). Father argues that because of Mother's failure to file all of the transcripts and exhibits in this case, this Court must presume that the trial court's decision is correct. Father cites **Outdoor Management LLC v. Thomas**, 249 S.W.3d 368 (Tenn. Ct. App. 2007), which states:

> It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment.

**Id.** at 377. While Mother has certainly not prepared an adequate record for this Court to review, she has provided more information than the Appellant in **Thomas**, who filed no transcript or statement of the evidence; Mother has provided the transcript from the final day of trial on Father's petition for custody held on August 24, 2011. This Court has previously held that it may choose to "soldier on" to decide the merits of a case when either the trial court or parties fail to follow the rules of this Court. **See Wells v. Wells**, No.

W2009-01600-COA-R3-CV, 2010 WL 891885, at *4 (Tenn. Ct. App. March 15, 2010) (considering the merits of the case despite the appellant's failure to provide a Rule 7 of the Tennessee Rules of the Appellate Court table detailing the marital property in a divorce case); *Burse v. Hicks*, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008) (holding that this Court may decide the merits of a case despite the trial court's failure to make appropriate findings of fact and conclusions of law when the case involves only a clear legal issue); *Burgess v. Kone, Inc.*, No. M2007–0259–COA–R3–CV, 2008 WL 2796409, at * (Tenn. Ct. App. July 18, 2008) (holding that this Court may "soldier on" when the facts are "readily ascertainable"). We have thoroughly reviewed the record in this case, and conclude that, although Mother did not meet her burden to provide a complete and accurate record, there is sufficient evidence in the record on appeal to sustain the trial court's ruling that Father is the more fit parent and that naming Father primary residential parent is in the child's best interest. While, in this particular case, we chose to proceed with our review of this issue despite the fact that Mother chose not to abide by the rules of this Court, we cannot say we will be so accommodating and choose to do the same in the future.

Turning to the evidence that is in record, according to the testimony presented on August 24, 2011, Mother denied that her boyfriend beat her oldest daughter with a belt. Rather, Mother admitted that she had done the beating and that it was her boyfriend who had stopped her. Mother also admitted that she had acted in a hostile and angry manner toward Father, but excused her behavior by stating that Father had also acted similarly. Mother further admitted that none of her other children had any relationship with their fathers, but stated that this was because of the fathers' prior criminal issues. Mother admitted that she had trouble controlling her oldest daughter, and that she left Jada and her other children with their maternal grandmother, who Mother testified had a drug problem. Mother also admitted that her oldest daughter had been in a physical altercation with another child in the home, causing injuries to the younger child. Mother was questioned and admitted to having pled guilty to the crime of bringing contraband into a prison prior to Jada's birth; however, the record also shows that Father was convicted of a DUI prior to these proceedings and only had his license reinstated during the course of the case. Mother was also questioned as to why her two younger children missed considerable amounts of school at the beginning of the 2011 school year; Mother testified that she was in the process of moving and could not prove that she was a Memphis City resident, as required to enroll her children in Memphis City Schools, until after the move. However, Mother also testified that, because her oldest daughter was assigned to an undesirable Memphis City School, she had chosen to keep the child enrolled in a county school. Mother was also questioned about her allegation that she was not allowed to call Jada while the child was with Father; Mother admitted that she chose not to call the child during those times. The testimony also indicated that Mother moved several times during Jada's life and often refused to provide Father with a working phone number or a home address. In addition, evidence showed that Mother was unwilling to compromise in that

Father was required to seek court intervention to prevent Mother from moving out of the jurisdiction and to be allowed to take the child on vacation. Mother argues on appeal, however, that testimony from Father's wife would rebut allegations that Mother was unwilling to compromise regarding parenting time and that the trial court erroneously excluded this evidence as unnecessary, choosing instead to rely upon the Exchange Club's report, which recommends that Father's wife take a more prominent role in the exchanges between Mother and Father.[8] Mother neither raised the trial court's exclusion of Father's wife's testimony as an issue in this appeal, nor did she present an offer of proof in the trial court as to what Father's wife's testimony would have been. This issue is, therefore, waived. *See* ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived."); ***Rutherford v. Rutherford***, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997) (holding that the failure to make an offer of proof constitutes a waiver of the issue on appeal). In addition, while Mother seeks to show that Father's wife has hostility toward the child by pointing to an incident where the child was burned while Father's wife was curling the child's hair, Father explained that the burn was merely an accident. Indeed, Mother herself testified that Husband's wife "ha[s] a gentle approach," is "respectful," and that she prefers to deal with Father's wife over Father.

Finally, in her expert opinion, Dr. Collins testified that she believed that Father should be named primary residential parent because he is the least hostile, the more honest, and the more flexible of the two parents. Dr. Collins based her opinion on sessions both with the child alone, and accompanied, at times, by Mother, Father, or Father's wife. Dr. Collins also relied upon information provided to Dr. Collins by the guardian *ad litem*. In contrast to Father, Dr. Collins testified that Mother often cancelled therapeutic appointments, was unable to be reached for some time at the number she provided to the Exchange Club, needed anger management instruction, and prevented Father from having therapeutic appointments with the child. Indeed, the evidence presented at the final hearing showed that Dr. Collins asked Mother to allow Father to pick the child up from daycare in order to have a session. However, Mother informed Dr. Collins that the daycare would not allow Father to come on the premises because of prior misbehavior on his part. The director of the daycare testified that she had no knowledge of any prior misbehavior on Father's part and that the only reason Father was not permitted to pick the child up from school was because Mother had not informed the daycare that he was authorized to do so. Dr. Collins emphasized, however, that she did not believe that it was in the child's best interest to have no visitation with Mother, but that Mother should get standard visitation privileges with the child.

---

[8] Again, the report from the Exchange Club is not in the record. Therefore, we presume that the trial court's description of the report is accurate. *See* ***Outdoor Management***, 249 S.W.3d at 377.

From the evidence that Mother has submitted to this Court, we cannot conclude that the trial court erred in naming Father the primary residential parent of Jada. The evidence in the final hearing shows that Father is far more likely to facilitate a close and loving relationship with Mother, that Father's household is more stable, and that Mother's household includes an older child who is, at times, disruptive and violent towards the other children. Although, as noted above, the record on appeal is somewhat lacking in regard to evidence of the child's adaptation to living in Father's home, based on the evidence submitted to this Court by Mother, we must likewise conclude that the child's best interests are served by naming Father primary residential parent. The trial court found that Mother's testimony was not credible, and Mother has not presented this Court with clear and convincing evidence to reverse that finding. Therefore, based on the foregoing, we affirm the trial court's determination that Father is the more fit custodian and that the child's best interests are served by naming him primary residential parent.

### B. Transfer of Mother's Petition to Lake County

We next consider Mother's argument that the trial court erred in transferring her petition for dependency and neglect to Lake County Juvenile Court. We agree. Tennessee Code Annotated Section 37-1-112(a) governs the transfer in this case, and states, in pertinent part:

> (a) If the child resides in a county of this state and the proceeding is commenced in a court of another county, the court, on motion of a party or on its own motion after a finding of fact, may transfer the proceeding to the county of the child's residence for further action. Like transfer may be made if the residence of the child changes pending the proceeding.

Accordingly, in order to transfer the case to the county of the child's residence, the juvenile court, where the proceedings were originally filed, must make a finding of fact regarding the requested transfer. The trial court's order transferring this case states:

> This cause came to be heard on November 28, 2011 before the . . . Juvenile Magistrate . . . , attorney for the mother, . . . guardian ad litem, . . . attorney for the father, . . . the mother, . . . and the father, . . . were before the Court, and upon proof introduced and the entire record, the Juvenile Magistrate finds that upon oral motions by the father . . . and upon the Court's own motion, it should be determined that pursuant to T.C.A. 37-1-112(a), the appropriate Court to hear this case should be the

-12-

Juvenile Court of Lake County, Tennessee, and that the case should be transferred to the appropriate jurisdiction.

IT IS THEREFORE RECOMMENDED

1.    That the case be transferred to the jurisdiction of the Juvenile Court of Lake County, Tennessee for all matters to be heard.

As pointed out by Mother in her brief, the trial court's order fails to make any findings of fact and, therefore, does not comply with the express requirements of Tennessee Code Annotated Section 37-1-112(a). While we agree with Father that Mother hindered appellate review by her failure to either file all of the transcripts in this case, or to provide a statement of the evidence, Mother's failure to provide transcripts does not relieve the trial court from its duty to make findings of fact. We have previously held that the appropriate remedy when a trial court fails to make required findings of fact is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact." *Lake v. Haynes*, No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at * 1 (Tenn. Ct. App. June 9, 2011). As previously discussed, this Court is sometimes able to "soldier on" in spite of the trial court's failure to make specific findings when the case involves only a clear legal issue, *Burse v. Hicks*, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008), or when the court's decision is "readily ascertainable." *Burgess v. Kone, Inc.*, No. M2007–0259–COA–R3–CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008). Because there is no transcript or statement of the evidence regarding this issue, however, we are unable to "soldier on." Mother asserts that there was no testimony and no evidence taken when the trial court decided this issue. Nothing in the record indicates that a court reporter was present for this proceeding; Father's motion to supplement the record with the missing transcripts was filed with this Court after the trial court transferred Mother's petition to Lake County, but does not state that a transcript of this proceeding exists. Father does not affirmatively state that there was indeed any evidence taken on this date but, instead, points out the language in the Special Judge's order that the decision is based "upon proof introduced and the entire record." Although the trial court's order states that its decision is based upon the evidence, it does not contain a recitation of any of the facts found to support Father's request to transfer the case to Lake County, as required pursuant to Tennessee Code Annotated Section 37-1-112(a). Additionally, nothing in the record indicates that the Lake County Juvenile Court has ever taken any action on Mother's petition. We thus conclude that a remand to the trial court for reconsideration of this issue in order to make appropriate findings of fact will not prejudice either party. Based on the totality of the circumstances, we vacate the judgment of the trial court transferring Mother's petition to Lake County and remand to the trial court to make findings as required by Tennessee Code Annotated Section

-13-

37-1-112(a).

### C. Modification of Mother's Parenting Time

We next turn to Mother's argument that the trial court erred in modifying her parenting time. The record shows that Father filed a petition for an injunction and to have Mother's parenting time modified. Indeed, the trial court entered an order stating:

> This cause came to be heard . . . and it appearing to the Court that an immediate injunction should be issued prohibiting mother . . . from being around the child unsupervised until further orders of the Court to the contrary and that all [Mother's] future visitation take place at the Carl Perkins Center . . . under further order of the Court to the contrary.

Again no transcript of this proceeding is included in the record. Mother asserts that there was no evidence taken on the day Father's petition was heard, and therefore there was no transcript or statement of the evidence to present. In his brief, Father does not deny that no evidence was taken, but contends that the trial court entered only a temporary order modifying Mother's parenting time based on Father's sworn petition and the trial court's previous knowledge of the parties' relative credibility. Thus, Father argues that this order is not final, and therefore not appealable to this Court. *See* Tenn. R. App. P. 3(a). We respectfully disagree. This Court has previously held that:

> [I]n some cases where the trial court has expressly recognized the possibility of a future change to its order this court has treated the order in place as final for purposes of appeal, *see* ***Hoalcraft v. Smithson***, 19 S.W.3d [822,] 827–28 [(Tenn. Ct. App. 1999)] (order of custody was final, even though trial court declared that it was placing the case on its review docket); ***Dailey v. Dailey***, No. 03A01-9409-CH-00340, 1995 WL 11179 at *3 (Tenn. Ct. App. Jan. 12, 1995) (no Tenn. R. App. P. 11 perm. app. filed) (order modifying custody from mother to father was a final order, even though trial court labeled it as temporary, and mother therefore had to demonstrate that there had been a material change of circumstances before custody could be returned to her).

***Clonce v. Clonce***, No. M2007-02155-COA-R3-CV, 2009 WL 1285895, at *4 (Tenn. Ct. App. May 8, 2009). We likewise conclude that this order is final for purposes of appeal;

Father admits that there has never been a final hearing on his petition, even though this "temporary order" was entered approximately eight months ago. Without allowing Mother to contest the trial court's ruling now, her right to timely appeal a ruling severely limiting her access to her child is stifled. Thus, we conclude that the trial court's order limiting Mother's parenting time with the child is final and appealable.

There is no question that the trial court's original order granting Mother unsupervised weekend parenting time was final for purposes of modification. "A custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith,* 246 S .W.2d 93, 95 (Tenn. 1952)). However, because the circumstances of children and parents change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C). First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C). "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." *Cosner v. Cosner*, No. E2007-02031-COA-R3-CV, 2008 WL 3892024, at *4 (Tenn. Ct. App. Aug. 22, 2008) (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). However, to determine whether a material change in circumstances has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered; and (3) the change is one that affects the child's wellbeing in a meaningful way." *Cosner*, 2008 WL 3892024, at *4 (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)).

Nothing in the trial court's order suggests that it found a material change in circumstances warranting modification. Further, Father admits that no affirmative evidence was presented when the trial court entered this order. Father only asserts that the trial court entertained argument from the parties' attorneys and read Mother's petition for dependency and neglect as well as Father's petition to modify Mother's parenting time. In addition, Father argues that the trial court put great weight on its previous observations of the parties' credibility and actions. Respectfully, the parties prior actions cannot constitute a material change in circumstances. By its very nature, a material change in circumstances justifying modification of a parenting schedule must include facts not "in existence or reasonably foreseeable when the decision was made." *Scofield*, 2007 WL 624351, at *3 (citing *Young,* 246 S .W.2d at 95). Thus, the trial court's perceptions regarding the parties' prior behavior

cannot be the basis of a modification of Mother's parenting time. Because no evidence was presented at the hearing in which the trial court modified Mother's parenting time and nothing suggests that the trial court found a material change in circumstance effecting the child's well-being in a meaningful way, we vacate the order of the trial court modifying Mother's parenting time and remand for further proceedings.

As a point of practice, we note that this decision leaves both Mother's petition to declare the child dependent and neglected and Father's petition to modify Mother's parenting time pending under different docket numbers and before different Special Masters. It seems logical that the allegations against each parent would necessarily be relevant to both petitions, as both petitions deal with the continued custody of this child. In our view, the better approach would be to consolidate these petitions and then determine if a transfer to Lake County is appropriate. If the trial court determines that a transfer is appropriate, the court should make the appropriate findings of fact and transfer both petitions, as well as all future proceedings, to the jurisdiction of the Lake County Juvenile Court.

## IV. Conclusion

The judgment of the Shelby County Juvenile Court is affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. Costs of this appeal are taxed one-half to Appellant, Tanyawa S. H., who is proceeding as a pauper, and one-half to Appellee Joseph C., for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE