# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 15, 2012

## YOLANDA URIA v. STEVE URIA

**Direct Appeal from the Circuit Court for Davidson County**
**No. 03D-253      Carol Soloman, Judge**

**No. M2011-02751-COA-R3-CV - Filed February 6, 2013**

This appeal involves post-trial motions in a divorce case. Several years after the divorce decree was entered, the father filed a petition to modify the parenting plan to seek more parenting time, and he filed a petition for contempt, alleging that the mother had prevented him from exercising his parenting time. The father later filed a motion asking the trial court to alter or amend the original divorce decree's child support provision in order to reduce his child support obligation retroactive to the date of the decree, and the arrearage that he had accrued over the years. The trial court modified the parenting plan, found the mother in contempt, and altered the portion of the original divorce decree pertaining to child support, thereby reducing the father's child support arrearage. The mother appeals. We affirm in part and reverse in part and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Geoffrey Coston, Franklin, Tennessee, for the appellant, Yolanda Uria

D. Scott Parsley, Joshua G. Strickland, , Tennessee, for the appellee, Steve Uria

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

Yolanda Uria ("Mother") and Steve Uria ("Father") were married for five years and had two children.  On February 4, 2003, Mother filed a complaint for divorce, which alleged as grounds: irreconcilable differences, adultery, abandonment, and inappropriate marital conduct.  At some point, the trial court ordered Father to pay child support, and Father was later ordered to appear and show cause why he should not be adjudged in contempt for failure to pay child support as ordered.[1]  Mother and Father appeared at a hearing on the matter on June 2, 2004.  Thereafter, on July 2, 2004, the trial court entered an order approving an agreement reached by the parties whereby Father would pay $667 per month in child support, and Mother was awarded a $4000 judgment on the child support arrearage owed by Father.  The trial court's order stated that the issue of the payments to be made by Father toward the arrearage would be reserved until the final hearing in the matter, and at that time, Father's income would be reviewed, and child support would be adjusted if necessary.  The trial court also reserved the issue of the criminal contempt allegations against Father until the final hearing.

On November 1, 2004, an agreed permanent parenting plan was filed with the court, which had been signed by both parties following mediation on October 25, 2004.  The plan provided that the children would primarily reside with Mother, but they would reside with Father every other weekend.  The mediated parenting plan also provided that Father would pay $667 per month in child support.[2]  However, the mediated parenting plan was never signed by the judge or adopted as an order of the court.

On December 3, 2004, Mother filed a petition for contempt "and for other additional relief."  Mother pointed out that the trial court's July order had required Father to begin paying $667 per month in child support, and she alleged that Father had not paid such

---

[1]  In July 2003, Father married another woman in Mexico.  Father's attorney filed a motion to withdraw in August 2003, stating that he had had no communication with Father and that Father had been reported missing.  Another attorney was substituted as counsel for Father, but that attorney also filed a motion to withdraw, in March 2004, stating that Father had failed to communicate with her.  In April 2004, the trial court entered an order allowing Father's attorney to withdraw and providing that Father would have fifteen days to either retain counsel or proceed pro se.  It appears that Father was unrepresented for the remainder of the divorce proceedings.  Mother was represented by an attorney from a local legal aid society.

[2]  The trial court's previous order of July 2, 2004 likewise required Father to pay $667 per month in child support, pending the final hearing, at which proof of his income would be considered and the amount of child support was to be adjusted if necessary.

support in accordance with the order. The motion also noted that the July order reserved until the final hearing the issues regarding Mother's previous allegations of contempt against Father and the amount he would pay toward his $4000 child support arrearage. Mother asked that Father be required to: appear at the hearing with proof of his income, pay all accumulated arrearages, pay future child support by wage assignment, and serve time in jail for his failure to abide by the court's orders. In accordance with Mother's request, the trial court entered an order in December 2004 directing Father to appear at a hearing before the court with evidence of his income since January 1, 2004, including salary check stubs and receipts, W-2 forms, income tax returns, bank statements, and canceled checks.

Following a hearing, the trial court entered a final decree of divorce on February 24, 2005. The order stated that Father was duly notified of the date of the final hearing but yet he failed to appear. The trial court heard sworn testimony from Mother at the final hearing and based its decision upon that testimony and "the entire record." The trial court found Father guilty of adultery, inappropriate marital conduct, and "abandonment and failure to provide for the wife and the children," and it awarded a divorce to Mother. The court found that Father had failed to visit the children as agreed by the parties during mediation. The court further found that Father had failed to pay child support as previously ordered and that Father had a total arrearage of $9,669.50. The court awarded "exclusive" custody to Mother according to a new permanent parenting plan that she had proposed, and which the court signed and adopted.[3] Pursuant to the parenting plan, Father was to have parenting time with the children every Sunday from 10 a.m. to 6 p.m., and he was ordered to pay child support in the amount of $1,126 per month beginning in February 2005.[4] Finally, the court ordered that a body attachment issue for Father and that he be arrested and required to appear before the trial judge for a hearing on the issue of his criminal contempt. The final decree contained a certificate of service indicating that the court clerk mailed a copy to Father at his Nashville address.

Father and Mother both appeared at a hearing before the trial court on June 29, 2005, on the petition for contempt. Thereafter, the trial court entered an order providing that the issue of contempt was dismissed, and that Father would pay $1,126 per month as current

---

[3] Although the previous, mediated parenting plan had never been signed by the trial judge, the parenting plan attached to the final decree of divorce stated that it "modifie[d] an existing Parenting Plan or prior Court Order, dated 1st day of November, 2004," which is the date the mediated parenting plan was filed.

[4] The parenting plan attached to the February 24, 2005 final decree also included child support worksheets. The income shares guidelines became effective January 18, 2005. Thus, it appears that the previous calculations of Father's child support obligation were likely based on a flat percentage of his income.

support and $400 per month toward his arrearage. The certificate of service attached to the order states that it was hand delivered to Mother and Father.

More than five years later, on October 26, 2010, the State of Tennessee filed, on behalf of Father, a petition for modification of Father's child support obligation. The petition noted that Father was ordered to pay $1,126 in child support pursuant to the final decree of divorce, and it alleged that a significant variance existed between the amount of child support currently being paid and the amount required by the child support guidelines. Thus, the petition sought a modification of current child support and a determination of any arrearage owed. A child support worksheet was filed on the same day as the petition for modification, and it calculated Father's child support obligation at $737. The trial court issued a show cause order requiring Mother to appear and show cause why child support should not be modified. Apparently, no action was taken on the petition to modify at this time.

A few months later, on March 2, 2011, Father filed, through counsel, a petition for criminal contempt and to modify the parenting plan. Father's petition noted that the final decree of divorce awarded him parenting time with the children every Sunday, and the petition alleged that Mother had "blocked all communications and attempts by Father to maintain a relationship with the parties' minor children." Father alleged that Mother would not return his telephone calls and changed her telephone number. Father's petition alleged that he had not had parenting time with the children on eighteen dates, which were Sundays, between October 31, 2010, and February 27, 2011. He asked that Mother be found guilty of willful criminal contempt for each of the eighteen separate occasions and sentenced to a total of 180 days in jail. Father asked for a modification of the parenting plan's provisions regarding parenting time, and he sought attorney's fees and costs.

A hearing on Father's petition for modification was held by a special master. The special master found that a significant variance existed between the amount of child support currently ordered and the amount owed according to the guidelines, and accordingly, the special master decided that Father's child support obligation should be reduced to $543. The special master found that Father should pay $150 per month toward his arrearage. However, the special master found that the amount of arrearage owed and the "begin date of modification" should be determined at a later hearing. These findings were later confirmed and approved by the circuit court judge.

At the next hearing before the special master, it was determined that the reduction in Father's current child support obligation should be effective as of November 1, 2010, due to the fact that the State filed the petition to modify child support near the end of October 2010. The special master calculated Father's child support arrearage at $57,938.37. The order entered by the special master stated, "Counsel for [Father] concedes that there is no

legal basis to modify support prior to the filing of the State's petition." This order was also approved and adopted by the circuit court judge.

A hearing was held before the circuit court judge on June 7, 2011. We have no transcript or statement of the evidence from the hearing, but the trial court's order states that it heard the matters of Father's petition for criminal contempt against Mother, and his petition to modify the parenting plan.[5] The order also states that the trial court heard testimony "of the parties and witnesses." Based on this evidence, the court found Mother guilty of 18 counts of willful criminal contempt "for not allowing Father to have parenting time" on the eighteen dates designated in Father's petition, as required by the divorce decree. The court sentenced Mother to 180 days in jail (10 days for each of the 18 acts), but it suspended all but 48 hours of Mother's sentence upon her strict compliance with "all" of the trial court's orders. The court went on to find that Father had "done everything in his power to exercise his parenting time with the minor children," while Mother had changed telephone numbers, moved, and changed schools without notifying Father. The court also found that Mother had returned Christmas gifts sent by Father in 2010, with no valid or excusable reason for doing so. The court found that Mother willfully and intentionally deprived Father of court ordered parenting time and that a modification of the parenting plan was appropriate. The court adopted a new parenting plan that allowed Father, who now lived in Memphis, to have parenting time with the children one long weekend per month, in addition to alternating holidays and four weeks during summer vacation. The parenting plan left Father's child support obligation at the amount set previously by the court: $543 per month for his current obligation, and $150 per month toward his arrearage. The court ordered Mother to pay $3,000 of Father's attorney's fee "for his representation of Father in securing Father's parenting time in this matter[.]"

Following the hearing by the circuit judge, on June 20, 2011, Father filed a "Motion" in which he asked the trial court "to modify and/or alter or amend" the final divorce decree that had been entered by the court on February 24, 2005. The Motion stated that, during the June 7, 2011 hearing on Father's petition for contempt and to modify the parenting plan, "it was discovered by the Court and counsel for the parties that the mediated parenting time and settlement agreement and child support calculations had not been attached to the Parenting

---

[5] We note that Mother had filed another petition for criminal contempt against Father, alleging that he had failed to pay the newly ordered amount of child support due in March, April, and May of 2011, since the hearing before the special master, and failed to pay his share of the children's orthodontic expenses. When this matter came up on appeal, there was no order in the record addressing or resolving Mother's petition for contempt. This Court entered a series of orders directing the appellant to obtain entry of a final judgment and directing the trial court clerk to transmit a supplemental record to this Court. After some delay, a final appealable order was received by the Court of Appeals in January 2013. The contempt petition filed against Father is not at issue on appeal.

Plan submitted by Mother's counsel at the time of the divorce, but a separate, different, non-negotiated child support work sheet and Parenting Plan had been attached which were not the agreement as reached by the parties in mediation." Again, the mediated parenting plan submitted by the parties prior to the final divorce hearing in 2005 had provided that Father would pay $667 per month in child support, while the parenting plan adopted by the court and incorporated into the divorce decree required him to pay $1,126 in child support. Father's motion asked the court to amend the 2005 divorce decree and to "properly calculate" his child support obligation so that "new judgments" could issue as to the amount of his child support obligation.

Mother filed a response in which she contended that Father's "Motion" was not a timely motion to alter or amend, as it was filed more than six years after the divorce decree, and she argued that it was not "made within a reasonable time" to the extent that the motion was construed as one for relief under Rule 60.02 of the Tennessee Rules of Civil Procedure. Thus, Mother argued that Father's Motion should be denied.

The trial court held a hearing on Father's "Motion" on November 21, 2011. The court heard arguments from counsel but did not allow the presentation of additional evidence. Thereafter, the court entered an order on December 9, 2011, finding that Father's Motion was well-taken. Specifically, the Court found that "pursuant to Rule 60.02(5), this is an appropriate case wherein justice requires that the Court modify its Order of February 24, 2005." However, the court only modified the portion of the divorce decree pertaining to child support. The court explained:

> The Court does not make this decision lightly; however, it finds that the safety valve provisions of Rule 60.02(5) apply in this matter in order to prevent the continuation of an injustice in this matter. The Court finds that during the hearing that took place on June 7, 2011, as encompassed in the Order filed June 23, 2011, that at the hearing of the original divorce hearing, information that was submitted as relates to Father's income was inaccurate. The Court does not cast any aspersions on counsel that were involved, but finds that it is clear from the record in this matter that the parties had previously mediated a Parenting Plan which also set child support pursuant to the Child Support Guidelines. The Court finds that this signed and mediated Parenting Plan is contained in the file. The Court finds after the mediated agreement had been filed that on February, 24, 2005, this Court entered another Parenting Plan with a different child support figure based apparently solely on the testimony of Mother. The Court finds that the income alleged in the attached child support worksheet was not the income that Mr. Uria earned at the time and Mr. Uria was not present, harboring the belief that the matter had been concluded as a

result of the mediated Parenting Plan and child support. The Court therefore finds that the interest of justice demands that the child support be modified from that which was set pursuant to the Order of February 8, 2005 to reflect that which was agreed upon by the parties in the mediated Parenting Plan which set child support, which is contained within the Court's file, but was not submitted to the Court at the time of the final hearing in this matter and the Court did not see the mediated agreement in the file and such was not brought to the Court's attention.

The Court further finds that the only complaint before it at the time was a complaint for divorce based upon the grounds of irreconcilable differences and that the matter was not appropriately before the Court on a contested basis. Therefore, Mr. Uria had no notice that relief would be sought other than that which was contained within the mediated Parenting Plan which contained the child support calculation based on his actual income. The Court finds that the Final Decree of Divorce entered on February 28th [2005] set child support in the amount of $1,126.00 per month. However, pursuant to the Parenting Plan which contained the correct child support figure signed by the parties on October 25, 2004, the child support was set in the amount of $667.00 per month. The Court finds the difference therein to be in the amount of $459.00 per month.

The court recalculated the child support owed by Father during the 73 months that had elapsed since 2005, and it reduced the arrearage owed by Father to $15,962.37. Mother timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the issues presented by Mother are basically:

1. Whether it was improper for the court to retroactively modify child support six years after it was set;
2. Whether the court erred by utilizing Rule 60.02(5) to set aside the judgment when the basis for relief was a "mistake" that would be governed by Rule 60.02(1);
3. Whether the court erred by setting aside a judgment under Rule 60.02(5) more than six years after the judgment was entered, when the petitioner knew of the judgment shortly after it was entered;
4. Whether the court erred by entering an order changing the amount of child support due without proof of Father's income or proof regarding the number of days of parenting time he exercised during that time period;

5.     Whether the court erred by finding Mother in contempt for failure to permit parenting time when Father had not exercised his parenting time in three years and gave no notice of his intent to resume parenting time;
6.     Whether the court erred by finding Mother in contempt for changing phone numbers, moving and changing schools without notice, not communicating with Father, and returning Christmas gifts, when the contempt petition did not allege such acts;
7.     Whether the court erred by ordering Mother to pay Father's attorney's fees for a criminal contempt action based on her interference with his parenting time.

For the following reasons, we affirm the trial court's decision in part, and we reverse in part, and we remand this matter for further proceedings consistent with this opinion.

## III.  DISCUSSION

### A.     Modification of the 2005 Divorce Decree

"Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997)).  Therefore, we review such decisions using the abuse of discretion standard.  *Id.*  "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Rule 60.02 provides that "[o]n motion and upon such terms as are just," a court may relieve a party from a final order for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;
(2) fraud . . . misrepresentation, or other misconduct of an adverse party;
(3) the judgment is void;
(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or
(5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.  "The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02.  The party seeking relief under Rule 60.02 has the burden of

proving that it is entitled to relief by clear and convincing evidence. *Henderson*, 318 S.W.3d at 336.

In this case, during the hearing on Father's "Motion," his attorney suggested that relief was appropriate in this case due to "mistake, fraud, or whatever you want to call it," which would fall under Rule 60.02(1) or (2). The trial judge expressed her belief that a "mistake" had occurred, but she also stated that relief was appropriate because the 2005 judgment was voidable, which would implicate Rule 60.02(3). However, the trial court's order granting Father's Motion stated that the court was proceeding under Rule 60.02(5). In any event, we find that the trial court's explanation of its decision in its written order indicates that the decision was based upon erroneous information, and therefore, Rule 60.02 relief was improvidently granted.

The trial court's order granting Rule 60.02 relief describes this case as one that began with a complaint for divorce *solely* alleging irreconcilable differences, and one which took a different course, without notice to Father, after the parties had reached a mediated parenting plan. The trial court's order granting Rule 60 relief states that "the only complaint before [the court] at the time was a complaint for divorce based upon the grounds of irreconcilable differences and that the matter was not appropriately before the Court on a contested basis." "Therefore," the court found, "[Father] had no notice that relief would be sought [at the final hearing] other than that which was contained within the mediated Parenting Plan which contained the child support calculation based on his actual income." Father chose not to attend the final hearing, "harboring the belief that the matter had been concluded as a result of the mediated Parenting Plan and child support," according to the trial court. Then, at the final hearing, the mediated parenting plan was not brought to the trial court's attention, and Mother pursued relief on other grounds that were not alleged in her complaint, at least according to the trial court.

The record of the proceedings in this case paints a very different picture. First of all, the complaint for divorce filed by Mother alleged as grounds irreconcilable differences *in addition to* adultery, abandonment, and inappropriate marital conduct.[6] Therefore, the divorce decree granted a divorce on grounds that were actually alleged in the complaint, and it did not grant relief that was wholly outside the pleadings in a manner that would render it void or voidable. Next, we address the trial court's statement that Father had no notice that relief would be sought at the final hearing other than that which was contained within the mediated Parenting Plan. Contrary to this finding, the record reveals that the mediated parenting plan had not been approved by the court, and in fact, the most recent order entered

---

[6] According to the final decree of divorce, Father also filed a counter-complaint for divorce, but that document was not included in the record before us.

by the trial court provided that Father's income would be reviewed at the final hearing, and child support would be adjusted if necessary. Father had been ordered to bring specific documentation regarding his income to the final hearing, as the issue of contempt was to be considered then as well. The trial court made a specific finding in the divorce decree that Father was duly notified of the date of the final hearing and yet failed to appear. Finally, we note the trial court's statement that the mediated parenting plan was not brought to the court's attention at the final hearing. In the final divorce decree, the trial court indicated its awareness of the recent mediation by specifically finding that Father was not visiting the children as agreed by the parties at mediation. In addition, the parenting plan adopted by the trial court and incorporated into the final decree states that it modifies the parenting plan dated November 1, 2004, which was the one reached by the parties at mediation. As discussed during the hearing on Father's Rule 60 Motion, it is likely that the change in Father's child support obligation was due, at least in part, to the fact that the income shares child support guidelines became effective January 18, 2005, just prior to the February 8, 2005 final hearing, and subsequent to the October 2004 mediation. The mediated parenting plan did not include child support worksheets, but worksheets were attached to the parenting plan submitted with the divorce decree. In addition, the parenting plan adopted by the trial court gave Father less parenting time than the mediated parenting plan, and an increase in his child support obligation would have been appropriate on that basis as well.

We note that the trial court's order explaining the basis for its decision to grant Rule 60 relief also stated that "inaccurate" information was presented at the final divorce hearing regarding Father's income. There is nothing in the record to support this statement, as the trial court did not allow the presentation of evidence at the hearing on Father's Motion. Nevertheless, even assuming that the evidence presented at the final divorce hearing was inaccurate, at most, it would constitute a mistake, and this fact alone would not justify setting aside the order more than six years later, considering the circumstances of this case.[7] Father knew, shortly after the entry of the February 2005 divorce decree, that he was ordered to pay $1,126 per month in child support rather than $667, as the parties had agreed during mediation. Besides the fact that Father was mailed a copy of the divorce decree, the record reveals that Father and Mother both appeared at a hearing before the trial court on June 29, 2005, on Mother's petition for contempt, and thereafter, the trial court entered an order dismissing the issue of contempt and providing that Father would pay $1,126 per month as current support and $400 per month toward his arrearage, as provided in the divorce decree. Father's attorney also acknowledged at the hearing on the Rule 60 Motion that Father had notice of the amount of his child support obligation because of a wage assignment in the

---

[7] Here, the trial judge was careful to point out that she was "not cast[ing] any aspersions on counsel that were involved," and she suggested at the final hearing that the mistake was likely accidental and due to the heavy caseload of Mother's attorney from the legal aid society.

amount of $1,126. Yet he did not seek to set aside the 2005 order until June 20, 2011. In the case of a mistake, and, even in cases involving fraud or misconduct of an adverse party, a motion to set aside must be filed not more than one year after the judgment in question was entered. *Henderson*, 318 S.W.3d at 335. Clearly, Father's motion to set aside was not made within a reasonable time under the circumstances of this case. And, a claim cannot be asserted under Rule 60.02(5) simply because relief under another provision is time-barred. *Wallace v. Aetna Life & Cas. Co.*, 666 S.W.2d 66, 67 (Tenn. 1984).

For all of these reasons, we find that the record in this case does not support the trial court's decision to set aside and modify the portion of the 2005 divorce decree relating to child support. The trial court resolved this issue based on a "clearly erroneous assessment of the evidence," *Henderson*, 318 S.W.3d at 335, which resulted in an abuse of discretion. We therefore reverse the trial court's decision to modify the portion of the 2005 divorce decree regarding child support, and its recalculation and reduction of the arrearage owed by Father. The original provisions of the divorce decree are accordingly reinstated.

### B.    Contempt

On appeal, Mother also raises several issues regarding the trial court's decision to find her in contempt. Mother contends that the trial court erred in finding her in contempt for interfering with Father's parenting time "when the Father gave no notice of his intent to exercise parenting time on those days, had not exercised parenting time in three (3) years and did not appear for the exchange." However, the trial court made its decision to hold Mother in contempt based upon the evidence presented at the June 7, 2011 hearing, and Mother has failed to provide us with either a transcript or a statement of the evidence from that hearing prepared in accordance with Tennessee Rule of Appellate Procedure 24(c). The appellant has a duty to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues that form the basis of his or her appeal. *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). "A recitation of facts and argument in an appellate brief does not constitute evidence and cannot be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *In re M.R.*, No. M2007-02532-COA-R3-JV, 2008 WL 2331030, at *3 (Tenn. Ct. App. W.S. June 3, 2008) (citing *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)). We cannot simply assume that the facts recited are true. *In re Conservatorship of Chadwick*, No. E2006-02544-COA-R3-CV, 2008 WL 803133, at *1 (Tenn. Ct. App. Mar. 27, 2008). "The law is clear that statements of fact made in or attached to pleadings, briefs, and oral arguments are not evidence and may not be considered by an appellate court unless they are properly made part of the record." *Threadgill v. Bd. of Prof'l Responsibility of Supreme Court*, 299 S.W.3d 792, 812 (Tenn. 2009).

"It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). We may only reverse the trial court's decision if we find, based on the "technical" record before us, that the trial court committed an error of law. *In re M.R.*, 2008 WL 2331030, at *3 (citing *In re Conservatorship of Chadwick*, 2008 WL 803133, at *2). Because there is no evidence in the record before us to support Mother's assertion that Father did not attempt to exercise his parenting time, she is not entitled to relief based upon this issue.

Mother also argues that the trial court erred by finding her in contempt for changing telephone numbers, moving and changing schools without notice, failing to communicate with Father, and returning Christmas gifts, when the contempt petition did not allege such acts. However, the trial court's order did not find Mother in contempt for these actions and inactions. The order states that Mother was found "guilty of eighteen (18) counts of willful criminal contempt of this Court's Order for not allowing Father to have parenting time on the dates designated pursuant to the [divorce decree]," and, based upon Mother's "failure to allow Father his court ordered parenting time," she was sentenced to 180 days in jail, or "10 days for each of the eighteen separate act[s] of criminal contempt." Due to the fact that the trial court considered Father's petition to modify the parenting plan at the same hearing, the order went on to address that matter as well. The court did find that Mother had changed telephone numbers and schools without informing Father, and returned Christmas gifts, with no justifiable excuse for doing so, before concluding that a modification of the parenting plan was in order. However, these findings were not discussed by the trial court in the section of the order pertaining to contempt, and we find nothing to suggest that Mother was held in contempt based upon these actions. Therefore, we find no merit in Mother's argument with regard to this issue on appeal.

### C.    Attorney's Fees

Finally, Mother argues that the trial court erred in ordering her to pay Father's attorney's fees for the criminal contempt action. Again, the record does not support Mother's characterization of the trial court's order. The order entered by the trial court states that Mother was ordered to pay $3,000 of Father's attorney's fees "for his representation of Father *in securing Father's Parenting time* in this matter." (emphasis added). There is specific statutory authority for an award of attorney's fees to the prevailing party in cases involving the custody of children. *In re Jonathan S. C-B*, No. M2010-02536-COA-R3-JV, 2012 WL 3112897, at *25 (Tenn. Ct. App. July 31, 2012) (citing Tenn. Code Ann. § 36-5-103(c)). It appears that the trial court's award of attorney's fees was due to the fact that

Father also pursued a petition to modify the parenting plan in conjunction with his petition for contempt. But, in any event, a court's statutory authority to award fees in proceedings to enforce or defend custody and support orders pursuant to section 36-5-103(c) "extends to criminal contempt proceedings which involve custody or support." ***Wilkinson v. Wilkinson***, No. M2010-00026-COA-R3-CV, 2011 WL 5986405, at *4 (Tenn. Ct. App. Nov. 29, 2011) (citing *Dhillon v. Dhillon*, No. M2009-02018-COA-R3-CV, 2010 WL 3025193, at *8 (Tenn. Ct. App. Aug. 2, 2010)). "[A]n award of attorney's fees to a prevailing party in a criminal contempt proceeding is not authorized by Tennessee law, *except for* those discretionary awards based on Tenn. Code Ann. § 36-5-103 in cases involving alimony, child support, or custody." ***Clarkson v. Clarkson***, No. M2006-02239-COA-R3-CV, 2007 WL 3072772, at *8 n.2 (Tenn. Ct. App. W.S. Oct. 22, 2007) (citing *Butler v. Butler*, No. 02A01-9409-CH-00218, 1995 WL 695123, at *2 (Tenn. Ct. App. W.S. Nov. 21, 1995); *Cooner v. Cooner*, No. 01-A-01-9701-CV00021, 1997 WL 625277, at *7 (Tenn. Ct. App. M.S. Oct. 10, 1997)) (emphasis added). As such, we find no error in the trial court's award of attorney's fees to Father.

## IV.  CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed in part and reversed in part and remanded for further proceedings. Costs of this appeal are taxed equally to the appellant, Yolanda Uria, and her surety, and to the appellee, Steve Uria, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.