# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 14, 2007 Session

## OUTDOOR MANAGEMENT, LLC, ET AL. V. WILLIAM H. THOMAS, JR.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-0520-02     The Honorable Arnold B. Golden, Chancellor**

---

**No. W2006-01464-COA-R3-CV - Filed April 18, 2007**

---

Appellant appeals from the trial court's orders finding Appellant in civil contempt and awarding attorneys' fees and costs to Appellees. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Irma Merrill Stratton of Memphis, Tennessee for Appellant, William H. Thomas, Jr.

David Wade and J. Lewis Wardlaw of Memphis, Tennessee for Appellees, Outdoor Management, LLC and John W. Harris, Trustee

## OPINION

This case concerns two contiguous tracts of land in Shelby County, Tennessee and the respective owners' attempts to build billboards on those tracts. The owner of one tract is William H. Thomas, Jr. ("Defendant," or "Appellant"). The owner of the other tract is Dr. John W. Harris. Outdoor Management, LLC ("OML," and together with Dr. Harris, as trustee, "Plaintiffs," or "Appellees") is in the business of leasing property on which to build outdoor advertising signs, construction of such signs, and selling advertising to be placed on the signs. On July 20, 2004, OML entered into a 40-year lease agreement with Dr. Harris, under which agreement Dr. Harris leased to OML part of 5.4 acres. It is undisputed that the property leased by OML is landlocked with ingress and egress to public roadway only through a dirt or gravel road across Mr. Thomas's property. On March 3, 2005, OML filed a "Complaint for Temporary Restraining Order, Temporary Injunction and Permanent Injunction" seeking a temporary restraining order "prohibiting [Mr. Thomas] from (i) denying access across the Access Road so that [OML] may proceed to construct the sign on the Tract before the State issued permit expires on March 21, 2005, and to maintain said sign and (ii) interfering with [OML's] contractual rights under the Harris Lease by ceasing [Mr. Thomas's] interference with [OML's] right to obtain access to the Tract in order to construct and maintain the sign." On March 15, 2005, the trial court entered a Temporary Restraining Order ("TRO"), which

restrained Mr. Thomas from denying OML access to Dr. Harris's tract by the access road that ran on Mr. Thomas's land.

On March 15, 2005, OML and Dr. Harris filed their "Amended Complaint for Breach of Contract, Specific Performance, Statutory Access Pursuant to Tenn. Code Ann. § 54-14-102, Declaratory Judgment, Temporary Restraining Order, Temporary Injunction and Permanent Injunction." On the same day, OML and Dr. Harris also filed a "Petition for Contempt and Writ of Scire Facias" against Mr. Thomas. In their Petition, OML and Dr. Harris assert that Mr. Thomas and his agents "intentionally blocked all access [to Dr. Harris's tract] with cars and trucks so that [OML] could not gain access to [Dr. Harris's tract]."

On March 17, 2005, Mr. Thomas filed his "Response to Plaintiffs' Petition for Contempt and Motion for Preliminary and Temporary Injunction." In his Response, Mr. Thomas asserts that:

> On March 3, 2005, Plaintiffs' counsel asked [the trial court] to issue a TRO. Defendant had no notice of Plaintiffs' request. Defendant was not given a chance to appear before [the trial court] before the court issued the TRO.
>
> *                    *                    *
>
> Defendant has been made aware, and will testify in court, that the permit issued to Plaintiffs to build the billboard described to [the trial court] prior to the issuance of the TRO does not permit the building of any billboard on the land owned or leased by Plaintiffs. Rather, the permit is specifically for building a billboard on land outside the boundaries of Plaintiffs' land.
>
> No billboard is presently permitted on Plaintiffs' land. Plaintiffs have no lawful right to construct a billboard on their land if no permit has been issued. Accordingly, if Plaintiffs have no right to build a billboard on Plaintiffs' land, there is no basis in law or equity to require Defendant to allow Plaintiffs access to Defendant's land for the sole purpose of building a structure not permitted by law. Defendant has not violated any order of any court. The petition for contempt should be denied.

On March 18, 2005, the trial court held the first of two hearings on OML's Amended Complaint for temporary, injunctive relief. At that hearing, the court heard testimony from Carter Gray, a county attorney, concerning the zoning and other requirements for erecting a sign. However, neither party sought to introduce any other witnesses. Based primarily upon the fact that OML had filed a Writ of Mandamus to bring municipal agencies into the lawsuit, the trial court reserved judgment on the issues until a later date, to wit:

I was trying to get an understanding of what it [i.e. the lawsuit] was about. I think I know now, but I don't think it's in the proper posture for the Court to rule on it at this point....

There are a lot of issues here. It's just not in the proper posture for the Court to make a decision on it. Again, if it turns out you are entitled to the relief you are asking for, I can order the sign be taken down.

On May 3, 2005, the trial court entered an "Order Setting Hearing Date," finding that:

Because of the absence of certain parties and the filing of Plaintiffs' Petition for Writ of Mandamus, the matter before the Court is not sufficiently ready to be heard at this time and should be postponed for a hearing to and until May 2, 2005.... Further, the Court finds that the Temporary Restraining Order issued on March 3, 2005 is dissolved by its own terms and is not renewed as of March 18, 2005 at 2:30 p.m.

The trial court conducted a second hearing on May 2, 2005. We note that there is neither a transcript of this hearing nor a statement of the evidence adduced at the May 2, 2005 hearing in the record. Following that hearing, on May 10, 2005, the trial court entered an "Order Granting Plaintiffs' Motion for Temporary Injunction," which reads, in pertinent part, as follows:

This matter came to be heard before the Honorable Arnold B. Goldin on May 2, 2005, upon the Amended Complaint, Motion for Temporary Injunction and Petition for Mandamus of Plaintiffs Outdoor Management, LLC ("OML") and John W. Harris, Trustee ("Harris") (collectively, "Plaintiffs"), upon the memoranda, affidavits and supporting materials submitted by Plaintiffs and Defendants William H. Thomas ("Thomas"), City of Memphis ("Memphis") and Memphis and Shelby County Office of Construction Code Enforcement ("Code Enforcement"), and upon the entire record in this cause, from all of which,

THE COURT FINDS THAT:
*                              *                              *

3) In order to deal with the Access Issue, Thomas engaged Plaintiff OML in an alliance and joint effort before Code Enforcement to persuade Code Enforcement that each of their respective properties was suitable for the construction of separate Billboard Signs;

-3-

4) There was in fact a joint effort between OML and Thomas and a relationship between them to persuade Code Enforcement that each of their respective properties was suitable for the construction of separate Billboard Signs;

5) During the course of the relationship between Thomas and OML, Thomas believed that OML would not be able to build a sign as long as Thomas' sign was located as planned, but did not disclose this information or belief to Plaintiffs or to Code Enforcement. Thomas willfully withheld this information from all concerned parties;

6) OML relied, to its detriment, on the putative relationship between OML and Thomas and was misled by and prejudiced by Thomas' failure to disclose all relevant information known to Thomas or believed by him.

7) During the course of the relationship between Thomas and OML, Thomas represented to OML that OML would have access to Plaintiffs' property for the purpose of constructing a Billboard Sign and could build said Billboard Sign. Further, Thomas silently acquiesced to OML's statements to Code Enforcement regarding Thomas' grant of access to Plaintiffs' property. OML believed and detrimentally relied on Thomas' representations and acquiescence regarding building the OML Billboard Sign and access to it;

8) Only after Code Enforcement had first issued OML's building permit to construct a Billboard Sign and then issued Thomas' building permit to construct a Billboard Sign, did Thomas tell OML that Thomas would refuse access across his property to allow OML to construct a Billboard Sign on Harris' property;

9) After Thomas blocked OML's efforts to construct a sign on Plaintiffs' property, Plaintiffs sought and obtained a Temporary Restraining Order (the "TRO"), which TRO ordered that: "Defendant is restrained from denying Plaintiffs access to the Tract across the Access Tract along the Access Road for the purpose of constructing an outdoor billboard sign on the land owned and leased by Plaintiffs;"

10) Despite knowing of and being bound by the clear terms of the TRO, Thomas, a licensed attorney, intentionally violated the specific provisions of the TRO and denied OML access to Plaintiffs' property; and

11) It would be bad enough for an ordinary citizen to violate a court order, but it is much worse for a member of the Bar to do so.

THE COURT FURTHER FINDS THAT:

*                              *                              *

4) Plaintiffs have suffered and will continue to suffer immediate and irreparable harm due to the actions of Thomas and the location of Thomas' Billboard Sign unless this Court takes immediate action to grant equitable relief to prevent such harm;

5) If Thomas' Billboard Sign remains in its present location, Plaintiffs will continue to suffer immediate and irreparable harm and will be improperly prevented from using their land for its best use;

6) Thomas will not be harmed by the removal and relocation of his Billboard Sign; and

7) Plaintiffs are entitled to an immediate grant of an easement across Thomas' property along the existing road under the doctrine of easement by estoppel.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1) Plaintiffs' Motion for Temporary Injunction is hereby granted;

2) Thomas shall immediately remove the Billboard Sign in such manner as permitted by appropriate regulations....

3) Thomas shall immediately abandon, void and cancel his building permits for the Billboard Sign....

*                              *                              *

5) OML is allowed to construct a Billboard Sign on Plaintiffs' property immediately upon OML's compliance with any and all local and state zoning and other regulations and subsequent receipt of the necessary and proper permits from Code Enforcement and the State of Tennessee Department of Transportation;

6) Thomas shall immediately grant Plaintiffs and their agents access to Plaintiffs' property by means of a temporary easement along the existing access road across Thomas' property for the limited purpose of acquiring regulatory permits for, and constructing and maintaining Plaintiffs' proposed Billboard Sign, until such time as Plaintiffs are granted permanent access....

7) Thomas shall take no steps or make any actions to prevent or obstruct OML's efforts to construct a Billboard Sign on Plaintiffs' property.

On May 18, 2005, OML and Dr. Harris filed a "Petition for Contempt and Writ of Scire Facias" against Mr. Thomas for his alleged failure to comply with the May 10, 2005 Order. Specifically, OML and Dr. Harris assert that, in violation of that Order, Mr. Thomas: (1) "has made no effort to remove his sign," (2) "has made it clear that he has no intention to **ever** remove his sign," (3) "has not abandoned, voided and cancelled the municipal or State building permits for his sign." Plaintiffs asked the court for a finding of contempt against Mr. Thomas, that Mr. Thomas be required to pay all costs suffered by Plaintiffs because of the alleged contempt, and that Mr. Thomas be required to pay Plaintiffs' attorneys' fees and costs. A hearing on the Petition for Contempt was set for June 1, 2005.

On May 18, 2005, Mr. Thomas filed his "Response to Plaintiffs' Petition for Contempt," along with his own Affidavit in support thereof. On May 13, 2005, Mr. Thomas filed a "Motion for Permission to Pursue Interlocutory Appeal and for Stay of Order of Injunction Pending Appeal." On the same day, Mr. Thomas also filed a "Motion to Alter or Amend" the May 10, 2005 Order. Both of these motions were denied by the trial court's Order of June 24, 2005. On May 26, 2005, Mr. Thomas filed an application with this Court for extraordinary appeal of the Temporary Injunction Order, wherein he sought, *inter alia*, a stay of the June 1, 2005 hearing. By Order of May 31, 2005, this Court denied Mr. Thomas' request to stay those proceedings and the matter was heard by the trial court on June 1, 2005. On June 3, 2005, the trial court entered an "Order Granting Plaintiffs' Petition for Contempt," which Order reads, in pertinent part, as follows:

3) The Court's May 10, 2005 Order remains a valid order in this matter;

4) Notwithstanding his May 18, 2005 affidavit, declaring that he would comply with the Court's Order, Thomas has delayed until the morning of the Court's hearing on the Petition for Contempt to submit an application for a permit to demolish the Billboard Sign;

5) Although it is within his power to do so, Thomas has willfully failed to remove the Billboard Sign;

6) Although it is within his power to do so, Thomas has willfully failed to abandon, void, and cancel his building permits for the Billboard Sign...; and

7) Thomas' willful failure to abide by the orders of the Court is shocking. The Court is especially shocked because Thomas is a lawyer.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1. Plaintiffs' Petition for Contempt is hereby granted;

2. Thomas is and shall be held in willful contempt of the May 10, 2005 Order of this Court;

3. Thomas is ordered to remove the Billboard Sign before Friday, June 3, 2005 at 12:00 p.m.;

4. Thomas is ordered to abandon, void and cancel his building permits for the Billboard Sign....before Friday, June 3, 2005.

\*                                    \*                                    \*

6. Thomas shall pay to Plaintiffs all reasonable attorneys' fees, expenses and costs, incurred by Plaintiffs in conjunction with the Petition for Contempt filed on May 17, 2005 and the prosecution of same.

Following the contempt hearing, this Court, by Order of June 1, 2005, required an answer to the application for extraordinary appeal. The same order also stayed the May 10, 2005 Order pending outcome of the Tenn. R. App. P. 10 petition. Mr. Thomas's application for Tenn. R. App. P. 10 relief was ultimately dismissed by this Court's Order of July 5, 2005, thereby ending this Court's stay of the May 10, 2005 Order. Following this Court's dismissal of the Tenn. R. App. P. 10 application, OML and Dr. Harris filed a "Motion to Enforce May 10, 2005 and June 3, 2005 Orders" in the trial court on July 8, 2005.

On July 14, 2005, OML and Dr. Harris filed a "Second Petition for Contempt and Writ of Scire Facias" against Mr. Thomas alleging that Mr. Thomas had still not removed the sign nor made steps to abandon, cancel, or void the building permits for the sign. Consequently, OML and Dr. Harris asked the court for a finding that Mr. Thomas was in contempt of the May 10, 2005 Injunction Order and the June 3, 2005 Contempt Order. Mr. Thomas filed a Response to the Second Petition for Contempt on or about July 20, 2005, along with his own Affidavit in support thereof (this was

the fourth of Mr. Thomas's Affidavits filed). The trial court heard the Second Petition for contempt on July 21, 2005. There is no transcript of this hearing or statement of the evidence. On July 25, 2005, the trial court entered its "Order Granting Plaintiffs' Second Petition for Contempt," wherein Mr. Thomas was again ordered to remove his billboard and relinquish his permits. Mr. Thomas was also ordered to pay OML and Dr. Harris's attorneys' fees, and costs "from May 3, 2005 until such time as Thomas is in complete compliance with the orders of this Court." The court's Order indicates that, in reaching its decision, the trial court relied "upon the memoranda, affidavits and supporting materials submitted by Plaintiffs and Defendant William H. Thomas ("Thomas"), upon the sworn oral testimony of Thomas, the arguments of counsel, and upon the entire record in the cause...." On July 26, 2005, the trial court entered a separate "Order to Remove Sign Structure at 5470 Boswell Street," which ordered Thomas to remove the billboard before noon on August 1, 2005.

On October 12, 2005, OML and Dr. Harris filed a "Third Petition for Contempt and Writ of Scire Facias," in which they assert, *inter alia*, that Mr. Thomas "has been engaging in a continued battle of intimidation, harassment and coercion of [the Tennessee Department of Transportation ("TDOT")] staff in an effort to use TDOT to deprive Plaintiffs of the enjoyment and benefits of a sign constructed on their property." On that same day, OML and Dr. Harris filed a fee affidavit covering attorneys' fees and costs incurred from May 3, 2005 until July 31, 2005. That affidavit asks for fees totaling $11,370.79. A hearing on the Third Petition for Contempt was held on November 30, 2005. On February 6, 2006, the trial court entered an "Order Denying Plaintiffs' Third Petition for Contempt and Writ of Scire Facias."

On January 18, 2006, OML and Dr. Harris filed "Attorneys' Fees and Costs Affidavit (Supplemental)," in which they claim attorneys' fees in the amount of $27,376.79 for "prosecuting their March 11, 2005, May 17, 2005 and July 14, 2005 petitions for contempt." On February 7, 2006, OML and Dr. Harris filed a "Motion to Approve Previously Awarded Attorneys' Fees, Expenses and Costs," seeking recovery of the $27,376.79 asserted in the supplemental affidavit. On March 29, 2006, Mr. Thomas filed his Response to the Motion to Approve Attorneys' Fees, in which he states, in relevant part:

> The fee affidavit filed by Plaintiffs on October 12, 2005, covered fees and costs incurred from May 3, 2005 until July 31, 2005. That affidavit asked for fees totaling $11,370.79.
>
> Plaintiffs filed a supplemental fees and costs affidavit dated January 18, 2006. That affidavit was the basis for a motion to approve fees served February 7, 2006. The fees and costs covered by that supplemental affidavit expanded the fees to those incurred from March 7, 2005 through August 5, 2005. Those fees total $27,376.79. There is no basis in this Court's Orders for an award of any fee incurred prior to May 3, 2005.

On March 30, 2006, OML and Dr. Harris filed a Reply to Mr. Thomas's Response asserting that they were entitled to attorneys' fees and expenses incurred in conjunction with their petitions for contempt, and the prosecution of same, from March 2005 forward.

A hearing on attorneys' fees was held on May 31, 2006. There is no transcript of these proceedings nor a statement of the evidence in record. On July 6, 2006, the trial court entered an "Order Approving Fees, Expenses and Costs for Prosecution of Contempt Citations," which Order reads, in pertinent part, as follows: [tr 3 405]

> This cause came on to be heard on May 31, 2006, on the Motion to Approve Previously Awarded Attorneys' Fees, Expenses and Costs filed by Plaintiffs, with attached Exhibit A and B; the Response of William H. Thomas to Plaintiffs' Motion to Approve Attorneys' Fees, with attachments 1 through 6; Plaintiffs' Reply to the Response of William [H.] Thomas to Plaintiffs' Motion to Approve Previously Awarded Attorneys' Fees, Expenses and Costs, with attached Exhibit A; Attorneys' Fees and Costs Affidavit filed on October 12, 2005; Attorneys' Fees and Costs Affidavit (Supplemental) filed January 18, 2006 and Affidavit of Louis Jay Miller, Esq., filed April 7, 2006; upon argument of counsel in open court and upon the entire record in this cause, from all of which:
>
> THE COURT FINDS:
>
> 1. The parties stipulate that the only issue for the court to determine at this hearing is the proper date from which to calculate the fees, expenses and costs relating to the contempt issues.
>
> 2. The proper date from which fees, expenses and costs should be assessed relating to the contempt issues is March 7, 2005.
>
> 3. The Court's order of May 10, 2005, specifically cited defendant for having willfully violated the Temporary Restraining Order that was entered in this cause on March 3, 2005. The intentional violations occurred on the weekend of March 6, 2005.
>
> 4. Mr. Thomas' violations of the Temporary Restraining Order caused Plaintiffs to amend the complaint and to file a Petition for Contempt on March 7, 2005.
>
> 5. It is clear to the Court that, but for Mr. Thomas' contempt in March of 2005, there would have been no need for further proceedings in May, June and July 2005 for the Order entered on May

-9-

10, 2005 finding that Thomas had willfully and intentionally violated the Temporary Restraining Order, or for the June 3, 2005 Contempt Order and the July 25, 2005 Contempt Order.

6. The decision of the Court to defer the March 2005 hearing to May 2005 in order to permit the joinder of parties did not mean that Mr. Thomas was not guilty of the March 2005 contempt and would not be held responsible for his acts.

7. The Court has considered the fees, costs and expenses in the amount requested and for the services provided by counsel for Plaintiffs and finds them to be reasonable and necessary.

8. The Court further finds that ordering the Defendant to pay the fees, costs and expenses is appropriate compensation to the Plaintiff[s] for injury arising from the disobedience of the Defendant of the Court's Temporary Restraining Order and other Orders holding Mr. Thomas in contempt.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED:

1. Mr. Thomas shall remit to Plaintiffs' counsel TWENTY SEVEN THOUSAND THREE HUNDRED SEVENTY SIX DOLLARS AND SEVENTY NINE CENTS ($27,376.79) in good funds for attorneys' fees, costs and expenses of Plaintiffs.

Such payment shall be made no later than thirty (30) days from the date of the hearing on this matter, or within thirty (30) days of May 31, 2006.

Mr. Thomas appeals and raises two issues for review as stated in his brief:

1. Whether the Chancellor erred in his award of damages related to his findings of contempt; and

2. Whether the Chancellor erred when he assessed serious damages and sanctions against Thomas, but prevented Thomas from testifying or cross-examining the witnesses against him.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R.App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the

truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W .2d 956, 959 (Tenn.1997).

Tennessee courts have the inherent authority and discretion to punish for acts of contempt. *Reed v. Hamilton*, 39 S.W.3d 115, 117 (Tenn.Ct.App.2000). However, a court's authority to hold a party in contempt is limited to the conduct described in T.C.A. § 29-9-102 (2000). *See Black v. Blount*, 938 S.W.2d 394, 397-98 (Tenn.1996). Among the conduct that courts have the authority to punish as contempt is "[t]he willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." T.C.A. § 29-9-102(3). The language of T.C.A. § 29-9-102(3) is unambiguous. Two elements are required for a finding of contempt: (1) willful disobedience or resistance, and (2) a lawful writ, process, order, rule, decree, or command of a court of this State. T.C.A. § 29-9-102(3); *State v. Winningham*, 958 S.W.2d 740, 745 (Tenn.1997). A court order specifically mandating or prohibiting the alleged contemptuous conduct is essential. *See Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511-12 (Tenn.2005) ("One may violate a court's order by either refusing to perform an act mandated by the order or performing an act forbidden by the order."). Contempt proceedings lie within the sound discretion of the trial court. *See, e.g., Herrera v. Herrera*, 944 S.W.2d 379, 396 (Tenn. Ct. App. 1996). Accordingly, a trial court's use of its contempt power is discretionary, *Robinson v. Air Draulics Eng'g Co.*,377 S.W.2d 908, 912 (Tenn. 1964), and an appellate court will review a trial court's contempt citation using the abuse of discretion standard. *Powell v. Powell*, 124 S.W.3d 100, 108 (Tenn. Ct. App.2003). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999)). Furthermore, the award of attorneys' fees based upon a finding of contempt is also reviewed under the less stringent abuse of discretion standard and we will not modify a punishment imposed for contempt unless the complaining party can show that the trial court abused its discretion. *See, e.g., Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995) (considering attorneys' fees); *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (considering punishment imposed for contempt). In the instant case, Mr. Thomas first asserts that the May 10, 2005 Order granting OML's petition for temporary injunction and ordering Mr. Thomas to remove his billboard and forfeit his permits was entered in error due to the alleged fact that the trial court did not allow testimony or cross examination at the May 2, 2005 hearing, which gave rise to this Order. In his argument, Mr. Thomas contends that "[t]he orders the court made as a result of its finding that Thomas violated the TRO were findings in the nature of contempt...." We disagree. The relief granted in the May 10, 2005 Order was injunctive.[1] In the May 10, 2005 Order, as set out above, the trial court makes no finding of contempt. Rather, the court makes findings of fact concerning Mr. Thomas's violation of the TRO

---

[1] In addition, OML filed an Injunctive Bond as outlined in Tenn. R. Civ. P. 65.05.

and orders Mr. Thomas to remove his billboard. As discussed above, Mr. Thomas pursued an interlocutory appeal from the May 10, 2005 Order, and his application was ultimately denied by this Court.

In its May 10, 2005 Order, the trial court states that, in reaching its decision to grant the temporary injunction, it relied "upon memoranda, affidavits and supporting materials submitted by Plaintiffs and Defendants William H. Thomas ("Thomas"), City of Memphis ("Memphis") and Memphis and Shelby County Office of Construction Code Enforcement ("Code Enforcement"), and upon the entire record in the cause." Mr. Thomas asserts that he was not allowed an opportunity to present evidence and to cross examine witnesses at the May 2, 2005 hearing and that, consequently, the May 10, 2005 Order was improperly entered. As noted above, the record contains no transcript of the May 2, 2005 hearing, nor a statement of the evidence. It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment. *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App.1977). The burden is upon the appellant to show that the evidence preponderates against the judgment of the trial court. *Capital City Bank v. Baker*, 442 S.W.2d 259, 266 (Tenn. Ct. App. 1969). The burden is likewise on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence from which this Court can determine if the evidence does preponderate for or against the findings of the trial court. Here, Mr. Thomas has failed to carry this burden. Consequently, we cannot conclude that the trial court erred in entering the May 10, 2005 Order.

Having found that the May 10, 2005 Order was a valid and enforceable Order, the first criterion for a finding of contempt is met in this case–i.e. a valid and lawful order, *see supra*. Concerning the second criterion–i.e. willful disobedience or resistence of that order, in his brief, Mr. Thomas admits that he violated the May 10, 2005 Order, to wit:

> Thomas recognizes that a person must obey an injunction, even if the order is unconstitutional, until it has been modified, set aside, or declared illegal. Boles v. City of Chattanooga, 892 S.W. 2d 416 (Tenn. App. 1994), perm. app. denied. When Thomas received the TRO, he believed that it ordered him to allow the Plaintiffs to cross his property to do an illegal thing–to build a sign for which there was no state permit. He did not believe that a TRO could require him to do an illegal thing. Because Thomas now understands that the law required him to obey an order of the court, even if it ordered an illegal thing, he does not on this appeal challenge the actual finding of contempt. This appeal challenges only the court's assessment of damages and imposition of sanctions.

Consequently, and as conceded by Mr. Thomas, we will not address the actual finding of contempt in this case. The sole issue before us, then, is whether the trial court erred in its award of damages stemming from that contempt. As set out above, the trial court entered two contempt orders. The

first, entered on June 3, 2005, requires Mr. Thomas to "pay to Plaintiffs all reasonable attorneys' fees, expenses and costs, incurred by Plaintiffs in conjunction with the Petition for Contempt filed on May 17, 2005 and in prosecution of same." The second contempt order, entered on July 25, 2005, orders Mr. Thomas to "pay to Plaintiffs all reasonable attorneys' fees, expenses and costs, incurred by Plaintiffs in conjunction with their Petitions for Contempt, and the prosecution of same from May 3, 2005 until such time as Thomas is in complete compliance with the orders of this court." In response to these orders, OML submitted its Affidavit of Attorneys' Fees and Costs detailing "$11,370.79 in attorneys' fees, expenses and costs in conjunction with the[] First and Second Petitions for Contempt and in the prosecution of same from May 3, 2005 until July 31, 2005." Because there was some confusion as to the scope of attorneys' fees awarded in these two orders, the trial court addressed the issue at the November 30, 2005 hearing, and made the following, relevant, statements concerning whether the March fees should be included in the award of attorneys' fees, to wit:

> MR. WADE [for OML and Dr. Harris]: Your Honor, if it is the Court's understanding that it [i.e. the issue of attorneys' fees] was dealt with in the terms of fees and expenses relating to the contempt in March, that's fine.
>
> THE COURT: It was my understanding that the order was that all fees incurred to that time would be included.
>
> MR. WADE: Thank you, Your Honor.
>
> THE COURT: If that's the issue–
>
> MS. STRATTON [for Mr. Thomas]: All fees in connection with the contempt petition.
>
> THE COURT: Correct.
>
> MS. STRATTON: Right.
>
> MR. WADE: All of the contempt petitions?
>
> THE COURT: All of the contempt petitions.
>
> MS. STRATTON: All of them.
>
> MR. WADE: Thank you.

-13-

THE COURT: Absolutely. Yes, that was because I know this order that is referenced in here, the June 3, 2005 order, dealt with–I thought dealt with that–with the original contempt.

MR. WADE: That was a lack of clarity on my part, Your Honor.

THE COURT: Because I remember we had this conference, and I wouldn't have–that was the whole point of that.

OML then filed a supplemental affidavit, which sets forth "$27,376.79 in attorneys' fees, expenses, and costs in conjunction with their several Petitions for Contempt and the prosecution of same through and including August 15, 2005." In its Order of July 6, 2006, *supra*, the trial court specifically finds that "[t]he proper date from which fees, expenses and costs should be assessed relating to the contempt issues is March 7, 2005." The Order awards $27,376.79 in attorneys' fees, expenses, and costs. This award is based, *inter alia*, upon the trial court's specific finding that "but for Mr. Thomas' contempt in March of 2005, there would have been no need for further proceedings in May, June and July of 2005 for the Order entered on May 10, 2005 finding that Thomas had willfully and intentionally violated the Temporary Restraining Order, or for the June 3, 2005 Contempt Order and the July 25, 2005 Contempt Order." In reaching its decision, the trial court's order states that it relied upon "the Motion to Approve Previously Awarded Attorneys' Fees, Expenses and Costs filed by Plaintiffs, with attached Exhibits A and B; the Response of William H. Thomas to Plaintiffs' Motion to Approve Attorneys' Fees, with attachments 1 through 6; Plaintiffs' Reply to the Response of William B. Thomas to Plaintiffs' Motion to Approve Previously Awarded Attorneys' Fees, Expenses and Costs, with attached Exhibit A; Attorney's Fees and Costs Affidavit filed October 12, 2005; Attorneys' Fees and Costs Affidavit (Supplemental) filed January 18, 2006 and Affidavit of Louis Jay Miller, Esq., filed April 7, 2006; upon argument of counsel in open court and upon the entire record in this cause...." Again, there is no transcript of the May 31, 2006 hearing, nor a statement of the evidence. Consequently, this Court must conclusively presume that there was sufficient evidence before the trial court to support its judgment. *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App.1977).

For the foregoing reasons, we affirm the order of the trial court holding Mr. Thomas in contempt and ordering him to pay $27,376.79 in attorneys' fees, expenses, and costs. Costs of this appeal are assessed against the Appellant, William H. Thomas, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.