# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 17, 2021 Session

## CHRISTINA BROOKE TIGART v. CHARLES SHANNON TIGART

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-18-745       Ted A. Crozier, Judge**

_____

### No. M2020-01146-COA-R3-CV
_____

Appellant/Father and Appellee/Mother's Marital Dissolution Agreement ("MDA") and agreed permanent parenting plan ("PPP") were incorporated into the final decree of divorce. In the PPP, the parties agreed to an upward deviation in Father's child support obligation. Mother subsequently petitioned the trial court to modify the parenting plan, to hold Father in contempt for failing to comply with certain provisions of the MDA, and to award her attorney's fees and costs under the MDA. The trial court initially modified the PPP to lower Father's child support obligations to comport with the child support guidelines; however, the trial court later granted Mother's Tennessee Rule of Civil Procedure 59 motion to alter or amend the judgment and reinstated the original upward deviation. The trial court denied Mother's petition for contempt and her request for attorney's fees. For the reasons discussed herein, we vacate the trial court's denial of Mother's contempt petition and reverse the trial court's denial of Mother's request for attorney's fees and costs under the MDA. The trial court's orders are otherwise affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Vacated in Part; Reversed in Part; Affirmed in Part; and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Charles Shannon Tigart.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Christina Brooke Tigart.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant Charles Shannon Tigart ("Father") and Appellee Christina Brooke Tigart ("Mother") were married on April 21, 2001. Two children were born to the marriage, C.T. (born in 2005), and C.B.T. (born in 2012).[1] The parties were divorced by order of the Chancery Court of Montgomery County ("trial court") on February 15, 2019. The final decree of divorce incorporated the parties' MDA and the PPP.

Under the PPP, Father was granted 125 days of parenting time, and Mother was granted 240 days. The PPP listed Father's monthly gross income at $10,000 and Mother's monthly gross monthly income at $1,256.57. Based on these incomes, the parenting plan provided that Father would pay monthly child support in the amount of $2,500.[2] The $2,500 was an upward deviation from the Child Support Guidelines; the parties agreed to this deviation "to ensure that the minor children are able to maintain the lifestyle they were accustomed to during the marriage." The agreement further provided that "[u]pon [C.T.] reaching the age of majority and graduating high school, the child support shall be reduced to $1,500 per month until [C.B.T.] reached the age of majority and graduates high school."

On August 12, 2019, Mother filed a "Petition to Modify Parenting Plan and for Relocation with the Minor Children; for Civil Contempt and Enforcement of Final Decree," wherein she asserted that there was a material change of circumstance that warranted a modification of the parenting plan. Among the material changes alleged were Mother's proposed move to Kentucky, where she "had a standing job offer as a real estate agent," and Father's "refus[al] to comply with the parenting plan as it relates to exchange times for the minor children." Furthermore, Mother sought a finding of contempt against Father for his alleged failure to comply with various provisions of the MDA. Specifically, Mother averred that: (1) Father had not completed renovations on the marital residence to prepare it for sale; (2) Father entered the marital residence without her consent in violation of the MDA provision granting Mother exclusive possession of the home; (3) Father failed to pay $2,500 monthly until the home was ready for sale, as required by the MDA; and (4) Father failed to remove a GPS tracker from Mother's vehicle, in violation of the provision of the MDA that required him "remove or disable any access he has to any devices attached to [Mother]'s vehicle . . . that gives [Father] knowledge of [Mother]'s movements." Mother sought enforcement of the MDA and further averred that she was entitled to an award of court costs and attorney's fees, pursuant to the following provision in the parties' MDA:

---

[1] During the marriage, Appellant fathered a third child, who was born in 2016, with another woman.

[2] Payments were to begin on the fifth day of the month that Mother vacated the marital residence. Provisions for the renovation and sale of the residence were set forth in the MDA.

In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, that party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the litigation.

On October 10, 2019, Father filed an answer and counter-petition, wherein he denied Mother's averments and denied that he was in contempt. He further asserted that there had been a material change of circumstance such that it was in the best interests of the children to modify the parenting plan to designate him as the primary residential parent. In support of his petition, Father averred, *inter alia*, that Mother had failed to adequately supervise the children. He also asked the court to order Mother to pay his attorney's fees and costs under the foregoing MDA provision.

On December 16, 2019, Father filed a Tennessee Rule of Civil Procedure 60 motion to set aside the February 15, 2019 final decree of divorce. Father averred, in relevant part, that he entered into the PPP and the MDA under the impression that the $1,050.00 upward deviation in child support was temporary, i.e., that he would pay the upward deviation for 6 months only. Based on this alleged "misrepresentation," Father asked the trial court to modify his child support obligation. The case proceeded to hearing on all pending motions on December 17, 2019. At the hearing, Father testified that: (1) his income was "about 50,000 a year"; (2) Mother's counsel coerced him into signing the MDA; (3) when he signed the MDA, he "wasn't in [his] right set of mind because [his] kids were there crying"; (4) he did not know what he was signing; (5) he had never seen the parenting plan that bears his signature; and (6) he did not read the MDA in the almost three months between the time he signed it on December 20, 2018, and when the divorce became final on February 15, 2019.

By order of January 15, 2020, the trial court denied Father's request to set aside the final decree of divorce. The trial court did not find Father's testimony about his income credible and noted that Father was "evasive and argumentative on the stand." The court held that Father's $10,000 per month income was "generously accurate," and there was no evidence that Father's income had decreased since the entry of the final decree of divorce. Mother was permitted to relocate to Kentucky (which the parties agreed upon before the hearing), and the parenting plan was modified to grant 225 days to Mother and 140 days to Father. The trial court applied the standard guidelines for child support to the new parenting plan and set Father's child support obligation to $1,288 per month, beginning January 1, 2020. From the bench, the trial court stated that this adjustment was due, in part, to the increase in Father's parenting days and the fact that Father had another child who was not considered on the original child support worksheet. Concerning Father's obligations under the MDA, the trial court held that Father had not complied with certain requirements and entered judgment in favor of Mother for arrears, but denied her request for attorney's fees. The trial court dismissed Mother's motion for contempt.

On January 21, 2020, Mother filed a Tennessee Rule of Civil Procedure 59 Motion to Alter or Amend Final Order, wherein she asked the trial court to reinstate the original child support amount of $2,500 per month and to award her attorney's fees. On July 29, 2020, the trial court entered an order that reinstated Father's $2,500 per month child support. In so doing, the trial court explained:

> The court, in its … Order filed January 15, 2020 . . . found that based on the new parenting plan that was entered, there was a material change in circumstances which required a modification of child support. The original parenting plan in the divorce gave Mother 240 days with the children and the Father 125 days, whereas the new parenting plan had Mother with 224 days and Father with 140 days. The court found that the incomes of the parties had not changed. . . . Father still made $10,000 a month and the court imputed Mother with $1,256.67 a month. Considering those numbers, the Child Support Worksheet dictated child support of $1,288 a month. The court found that was more than a 15% deviation, a material change of circumstances, and that Father's child support should be reduced . . . to $1,288 a month.
>
> . . .
>
> The court finds that it misapplied the law as to TCA 36-5-101(g)(1) and the Child Support Guidelines and that it was improper for the court to find a deviation that lowered the Father's child support. Therefore, the court orders that the child support continue as dictated in the child support worksheet at the time of the Final Decree of Divorce [(i.e. $2,500.00 per month)].

The trial court again denied Mother's request for attorney's fees because "[t]he main impetus of this litigation was that the Mother was moving away to Kentucky [and sought] a modification of a parenting plan based on that move." The court also denied Mother's request to hold Father in contempt. The trial court entered an order on Father's arrears on August 17, 2020. Father filed a notice of appeal on August 27, 2020.

## II. ISSUES

Father presents one issue for review: "[Whether] [t]he Trial Court erred in imputing Appellant's income at $10,000.00 per month in the final decree, then post-trial increasing the support due by another $1,200.00+/- without a legal basis for the increase."

In the posture of Appellee, Mother presents the following issues:

1. Whether the trial court correctly determined that there was not a material change warranting a downward deviation in the father's child support obligation[.]
2. Whether the trial court erred in not finding the father in contempt for his failure to comply with multiple financial terms of the final decree of absolute divorce[.]
3. Whether the father intentionally misrepresented his income to the court[.]
4. Whether the mother should be awarded attorney's fees incurred at trial and on appeal[.]

### III. STANDARD OF REVIEW

We reverse a trial court's ruling on a motion to alter or amend only upon finding an abuse of discretion. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020), *reh'g denied* (Feb. 21, 2020). We also review contempt proceedings based on the abuse of discretion standard. *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007). The Tennessee Supreme Court has explained that

> [a]n abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted). "[A] trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

Our review of a trial court's findings of fact is de novo, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 691–92 (Tenn. 2014). The interpretation of written agreements is a matter of law to be reviewed de novo on the record, according no presumption of correctness to the trial court's conclusions of law. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

### IV. ANALYSIS

### A. Child Support

Father asserts that the *original* upward deviation of child support—which was agreed to in the PPP and incorporated into the decree of divorce—was improper.[3] Citing this Court's opinion in **Reeder v. Reeder**, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012), Father argues, for the first time on appeal, that the trial court failed to "specifically state in written findings why the application of the Child Support Guidelines would be unjust or inappropriate in the case" as is required when making an upward deviation in child support. *See* Tenn. Comp. R. & Regs. 1240-02-04-.07(c). However, Father did not raise the issue of a lack of findings in the final decree in either his "Motion to Set Aside or Alter or Amend Final Decree and Parenting Plan Judgment" or in his pre-trial brief (both of which were filed on December 16, 2019). Furthermore, he did not raise the issue at the subsequent hearing or in his "Response to Mother's Rule 59 Motion to Alter or Amend Final Order." It is well settled that, "the issues addressed by the appellate courts should be limited to those that have been raised and litigated in the lower courts[.]" **Baugh v. Novak**, 340 S.W.3d 372, 381 (Tenn. 2011). Moreover, the Tennessee Supreme Court has explained that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." **Hodge v. Craig**, 382 S.W.3d 325, 335 (Tenn. 2012). Because Father did not raise this issue at the trial level and did not designate it as an issue in accordance with the Rules of Appellate Procedure, the issue of whether the original upward deviation in child support was error is waived.

In her Rule 59 motion to alter or amend judgment, Mother argued that the trial court erred in reducing Father's child support obligation—which previously was based on an agreed upward deviation—to the amount indicated by the child support guidelines.[4] Mother cites Tennessee Code Annotated § 36-5-101(g)(1) for the proposition that a modification in child support is not proper if the circumstances that caused the deviation have not changed. The trial court agreed and reinstated Father's $2,500 per month child support obligation on the ground that it misapplied the law when it reduced Father's child support obligation, *see supra*.

In Tennessee, a child support order is eligible for modification when there is a significant variance, i.e., at least a fifteen percent difference in the current support obligation and the proposed support obligation. Tenn. Comp. R. & Regs. 1240-02-04-

---

[3] At the December 17, 2019 hearing, Father testified that he was coerced into signing the MDA and PPP; however, Father does not appeal the trial court's holding that he was not coerced to sign the agreements. Furthermore, at trial, Father testified that he made $50,000 a year; on appeal, he concedes that his income is $10,000 per month.

[4] "The motion to alter or amend allows the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters." **Vaccarella v. Vaccarella**, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (quotation omitted).

.05(2)(a), (b); **Wade v. Wade**, 115 S.W.3d 917, 921 (Tenn. Ct. App. 2002).[5] "The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists." **Wine v. Wine**, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007). To determine whether a significant variance exists, the trial court must compare the existing ordered amount of child support to the proposed amount and must "not include the amount of any previously ordered deviations or proposed deviations in the comparison." Tenn. Comp. R. & Regs. 1240-02-04-.05(4). Furthermore, Tennessee Code Annotated § 36-5-101 provides, in relevant part:

> [T]he court shall decree an increase or decrease of support when there is found to be a significant variance . . . between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(g)(1); **Wade**, 115 S.W.3d at 921. If the circumstances that result in the deviation have not changed, the order may be modified only if "there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order[.]" Tenn. Comp. R. & Regs. 1240-02-04-.05(5).

In its July 29, 2020 order on Mother's Rule 59 motion, the trial court ordered that Father's child support "continue as dictated in the child support worksheet at the time of the Final Decree of Divorce," i.e., $2,500 per month. Citing Tennessee Code Annotated § 36-5-101(g)(l) and Tenn. Comp. R. & Regs. 1240-02-04-.05, the trial court held that it had misapplied the law and explained that

> [w]hen you compare the old order with the new order, there is not a significant variance unless you apply the previously agreed upward deviation. . . . The court originally couldn't find the reason for the deviation

---

[5] Through November 6, 2020, a "change of circumstances" was also required. Both pre-and post-November 6 rules exclude deviation amounts from the significant variance calculation:

> (c) For all orders modified May 10, 2020 through November 6, 2020, for the case to be modified per the current Guidelines, there must be a change of circumstances, such as income or number of children to support, in addition to at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order.
> (d) For all orders modified on or after November 7, 2020, for the case to be modified per the current Guidelines, there must be a at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order.

Tenn. Comp. R. & Regs. 1240-02-04-.05.

in the first place. In re-reading the explanation for the deviation, it is apparent to the court that the parties wanted the upward deviation "to ensure the minor children are able to maintain the lifestyle they are accustomed to." The court does not see how that factor has changed since the ordering of the original parenting plan. . . .

According to the PPP, the goal that precipitated the deviation was "to ensure that the minor children are able to maintain the lifestyle they were accustomed to during the parties' marriage." From the evidence, it is clear that Father has maintained a standard of living similar to that enjoyed during the marriage. According to his testimony, in 2019, Father took trips to Saint Louis, Gatlinburg, and to Gulf Shores. Father is also a Tennessee Titans "club level" season ticket holder. From the evidence, there is simply no proof that Father's lifestyle has changed since the divorce. In short, the reason for the upward deviation in his child support obligation (i.e., to ensure that the children enjoy a lifestyle similar to that enjoyed during the marriage) has not changed. In the absence of a change in the circumstances that resulted in the deviation, a modification of the original child support order would be proper only if there were "other circumstances . . . that would lead to a significant variance between the amount of the current order, *excluding the deviation*, and the amount of the proposed order[.]" Tenn. Comp. R. & Regs. 1240-02-04-.05(5) (emphasis added).

Father asserts that his child support obligation should be reduced because he now has another child who should be factored into the child support calculations. Father further assets that his support obligation should be reduced because he has fifteen more days of parenting time with the parties' two children under the new parenting plan. It is true that Father now enjoys more parenting time, but when the upward deviation is excluded from the calculation, the change in parenting time does not result in a significant variance. The original child support worksheet attached to the agreed PPP indicated that Father's child support obligation was $1,406 before the upward deviation. Fifteen percent of $1,406 is $210.90. Thus, a difference of $210 between the original support amount of $1,406 and the proposed support amount would reflect a significant variance. In its child support worksheet, which was attached to the January 15, 2020 order, the trial court credited Father with a third child and adjusted the parenting days; this resulted in a child support obligation of $1,288, which is a difference of only $118. Therefore, when the upward deviation is removed from the calculation, the evidence does not preponderate against the trial court's finding that there was not a significant variance so as to warrant a change in Father's support obligation.

As noted above, this Court will reverse a trial court's ruling on a motion to alter or amend only upon finding an abuse of discretion. *Harmon*, 594 S.W.3d at 305. "An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249

S.W.3d 346, 358 (Tenn. 2008). Based on the foregoing, we conclude that the trial court applied the applicable legal standards and properly considered the relevant factors to guide its decision; as such, the trial court did not abuse its discretion in reinstating the upward deviation in Father's child support obligation. We affirm this portion of the trial court's order.

## B. Contempt

Mother asked the trial court to hold Father in contempt for failure to comply with the terms of the MDA, which was incorporated into the February 15, 2019 Final Decree of Divorce. The trial court declined to do so. In Tennessee, courts have inherent authority to punish parties for acts of contempt. *Reed v. Hamilton*, 39 S.W.3d 115, 117–18 (Tenn. Ct. App. 2000). This authority is limited statutorily, and includes, *inter alia*, the punishment of a party that engages in "willful disobedience or resistance . . . to any lawful writ, process, order, rule, decree, or command" of the court. Tenn. Code Ann. § 29-9-102(3). Because "[c]ontempt proceedings lie within the sound discretion of the trial court," our review is based on the abuse of discretion standard. *Outdoor Mgmt., LLC*, 249 S.W.3d at 377.

To prevail on a civil contempt claim, the plaintiff must establish four elements: (1) the order alleged to have been violated is lawful; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the plaintiff must prove by preponderance of the evidence that the defendant actually violated the order; and (4) the defendant violated the order willfully.[6] *Konvalinka*, 249 S.W.3d at 355. The trial court made the following findings concerning contempt:

> 30. Page, 3, paragraph 4(A) and (C) of the Marital Dissolution Agreement that was incorporated into the Final Decree reflected that the Father was to pay the Mother the sum of $2,500.00 per month in addition to paying the mortgage and all utilities on the former marital residence.[7] The

---

[6] Father argues that "it would be an offense" to the trial court to disturb its ruling. He reasons that contempt of court is a means to address an offense against the court, and that Mother "asks this Honorable Court to find the Trial Court erred in its finding that 'I am not offended.'" (Emphasis removed.) Father's argument conflates criminal and civil contempt. Criminal contempt exists to vindicate the court's authority. *Reed*, 39 S.W.3d at 118. The purpose of civil contempt, however, is to enforce a private right that was created by a court order. *Id.* It is civil contempt that is at issue in the instant case.

[7] The MDA provided:

> The Husband shall continue to pay all utilities for the marital residence, maintain and keep current the mortgage on the marital residence, pay insurance for the Wife's vehicle and deposit money into the joint checking account in an amount no less than $2,500.00 per month until the sale of the marital residence is completed. This financial obligation shall terminate upon the sale of the marital residence is completed.

Father was further to pay for certain repairs to the marital residence and the house was to be sold within six (6) months of said repairs being completed.

31. The court finds that the Father has an arrearage on said support in the amount of $7,300.00 based upon the exhibits entered into evidence.

32. The court also finds that the Father did not complete the necessary repairs on the arial residence and that the Mother incurred a total of $807.11 . . . in making said repairs on her own.

The record supports the trial court's findings that Father failed to meet certain obligations under the MDA. Furthermore, the trial court found the MDA lawful and enforceable inasmuch as it rejected Father's argument that he was coerced into signing, denied Father's request to set aside the Final Decree of Divorce, and ordered Father to pay arrears based on the agreement. However, the trial court's order is silent on the question of whether Father's failure to satisfy his requirements under the MDA was willful. A party may be noncompliant with a court order, but that noncompliance will not constitute contempt in the absence of a finding that the party "violated the order willfully." *Konvalinka*, 249 S.W.3d at 355. Therefore, in order to justify its denial of Mother's contempt petition, the trial court was obligated to discuss the question of willfulness.

"It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quotation omitted). Moreover, Rule 52.01 of the Tennessee Rules of Civil Procedure require that in all non-jury actions, "the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." A trial court's "findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quotation omitted). Although the record supports the trial court's findings that Father failed to meet certain requirements under the MDA, in the absence of any findings concerning the question of Father's willfulness, we cannot review the propriety of the trial court's denial of Mother's petition for contempt. In other words, we are unable to determine whether the trial court properly considered the factors customarily used to guide

---

The PPP provided:

> The father shall pay to the other parent as regular child support the sum of $2,500.00 monthly in two (2) increments of $1250.00 due on the 5th and 20th day of each month beginning the month that the Wife moves out of the marital residence consistent with the terms of the MDA filed herewith. Upon [C.T.] reaching the age of majority and graduating high school, the child support shall be reduced to $1,500.00 per month until [C.B.T.] reaches the age of majority and graduates high school.
>
> . . .
>
> Payments shall begin on the 5th day of the month that the Mother vacates the marital residence consistent with the terms of the MDA filed herewith.

the discretionary decision of whether to hold a party in civil contempt. *See* **Konvalinka**, 249 S.W.3d at 358. Therefore, we vacate the trial court's denial of Mother's petition for contempt and remand the case for reconsideration of the contempt question and for entry of an order containing the necessary findings of fact and conclusions of law concerning each of the prima facie factors for contempt.

### C. Father's Income

Mother next asks us to determine "[w]hether the father intentionally misrepresented his income to the court." This is not a proper issue for appeal. This Court functions as an error-correcting court. **McDonough v. McDonough**, 499 S.W.3d 401, 405 (Tenn. Ct. App. 2016). The errors we have the power to correct, however, are those of the trial court. Mother, in her third issue, does not assign error to the trial court but to Father. Mother's argument to this Court focuses on what she asserts are Father's misrepresentations. We might infer that Mother intended to appeal a factual finding by the trial court with respect to Father's income; however, the trial court found that Father's testimony about his income was not credible and that Father's income had not changed since the entry of the final decree of divorce. Furthermore, on appeal, Father concedes that his income is $10,000 per month. Mother asks us to find "that the Father perjured himself with the intent to defraud the court"; however, perjury is a criminal offense, *see* Tenn. Code Ann. § 39-16-702, and is outside the jurisdiction of this Court. *See* Tenn. Code Ann. § 16-4-108 (a)(1) ("The jurisdiction of the court of appeals is appellate only, and extends to . . . civil cases . . . .") It appears that this "issue" is intended as an argument in furtherance of Mother's contention that the trial court erred in denying her request for attorney's fees and costs. We now turn to address that question.

### D. Attorney's Fees

Mother asserts that she should be awarded her attorney's fees and costs accrued at both the trial level and on appeal. As grounds, Mother cites both the MDA provision, *supra*, addressing attorney's fees and Tennessee Code Annotated § 36-5-103(c).[8] In its July 29, 2020 order, the trial court denied Mother's request for attorney's fees, to-wit:

> The court finds that the litigation subsequent to the divorce decree was initiated by the Mother. On August 12, 2019, she filed a *Petition to Modify Parenting Plan and for Relocation* with the children; for *Civil Contempt* and

---

[8] Tennessee Code Annotated § 36-5-103(c) provides, in relevant part:

A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce . . . any decree of alimony, child support, or provision of a permanent parenting plan order, . . . both upon the original divorce hearing and at any subsequent hearing.

- 11 -

*Enforcement of Final Decree.* On October 10, 2019, the Father answered that petition and filed a counterclaim for a modification of parenting plan and to designate [Father] as primary residential parent. Even though the court found that [Father] was in arrears in certain financial aspects, there were arguments on both sides as to whether the Father was in arrears or not. The main impetus of this litigation was that the Mother was moving away to Kentucky [and sought] a modification of a parenting plan based on that move. The court found neither side in contempt in this matter.

Based on these factors, the court finds that the parties should pay their own attorney fees.

### 1. Attorney's Fees under the MDA

The Tennessee Supreme Court has held that "our courts do not have discretion to deny an award of fees mandated by a valid and enforceable agreement between the parties." **Eberbach v. Eberbach**, 535 S.W.3d 467, 479 (Tenn. 2017). An MDA is "a contract entered into by a husband and wife in contemplation of divorce" and, as such, is "generally . . . subject to the rules governing construction of contracts." **Id.** at 474. After an MDA is incorporated into the final decree of divorce, certain issues "that are governed by statutes, such as child support during minority and alimony, lose their contractual nature and become a judgment of the court." **Id.** However, provisions regarding issues that are not governed by statute retain their contractual nature; hence, an "MDA may include enforceable contractual provisions regarding an award of attorney's fees in post-divorce legal proceedings." **Id.** at 474–75. "Absent fraud, mistake, or some other defect, [Tennessee's trial and appellate] courts are required to interpret contracts as written, giving the language used a natural meaning." **Id.** at 478. The Court explained:

> Because fee provisions in marital dissolution agreements are binding on the parties, when confronted with a request for fees under both contractual and statutory authority, our courts should look to the parties' contract first before moving on to any discretionary analysis under statutes such as section 36-5-103(c) . . . . Courts reviewing requests for fees pursuant to a[n] MDA fee provision should first determine whether the parties have a valid and enforceable MDA that governs the award of attorney's fees for the proceeding at bar. If so, our courts must look to the actual text of the provision and determine whether the provision is mandatory and applicable. If so, the MDA governs the award of fees, and our courts must enforce the parties' contract.

**Id.** at 478–79.

Here, we infer that the trial court found the parties' MDA to be a valid and enforceable agreement insofar as it enforced certain provisions of the MDA. Furthermore,

the trial court denied Father's request to set aside the MDA because it found that Father's testimony (i.e., that he was coerced into signing the MDA and did not know what it said) was not credible.[9]  Notwithstanding the position he took at trial, Father raises no issue on appeal concerning the validity and enforceability of the MDA.[10]  Accordingly, the validity and enforceability of the parties' MDA is not before this Court.  *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.")  We turn, then, to the language of the MDA to determine whether Mother is entitled to her attorney's fees and costs.  Section 17 of the MDA provides:

> In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, that party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

Mother filed the motion to hold Father in contempt "for his failure to remove his property from the marital residence, for entering the property without the consent of the Mother, for failing to complete the renovations so that the house can be sold, for failure to pay the mortgage, [and] for failure to meet his financial obligation of $2,500.00 per month."  Although the trial court did not hold Father in contempt, in its January 15, 2020 order, the court found that Father was $7,300 in arrears on the payments that he was obligated to make under the MDA, and that he had not completed the necessary repairs on the marital residence which resulted in an $807.11 expense to Mother.  As noted above, notwithstanding the question of contempt,[11] the record supports the trial court's findings that Father failed to comply with the MDA.  As such, it was reasonably necessary for Mother to institute legal proceedings to enforce the MDA.  Under the plain language of the foregoing provision of the MDA, Mother is entitled to an award of her "reasonable expenses including attorney's fees" incurred at both the trial level and on appeal.

### 2. Attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c)

---

[9] "The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary."  **Duke v. Duke**, 563 S.W.3d 885, 894 (Tenn. Ct. App. 2018) (citing **Morrison v. Allen**, 338 S.W.3d 417, 426 (Tenn. 2011)).

[10] In the "Statement of the Facts" of his appellate brief, Father repeats his trial testimony that he "was unaware of what [he] was signing," "wasn't in [his] right mind," and was coerced by Mother's counsel to sign the MDA.  On appeal, however, he does not raise any issue concerning the validity of the MDA.  Indeed, Father does not argue that Mother is not entitled to attorney's fees under the MDA; in his reply brief, Father does not respond to Mother's argument in that respect, but rather focuses solely on whether Mother was entitled to attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c).

[11] We note that the MDA does not require that the party seeking enforcement of the MDA be the "prevailing party."  Therefore, even if Father is not held in contempt, Mother should be awarded attorney's fees if it was reasonably necessary for her "to institute legal proceedings to procure the enforcement of any provision" of the MDA.

- 13 -

The Tennessee Supreme Court has instructed that "[e]ven if the court determines that an award of attorney's fees is mandated by the terms of the MDA, the court still should also review the claims for fees or expenses under any applicable statutory authority." *Eberbach*, 535 S.W.3d at 479. Tennessee Code Annotated § 36-5-103(c) provides, in relevant part:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce . . . any decree of alimony, child support, or provision of a permanent parenting plan order, . . . both upon the original divorce hearing and at any subsequent hearing.

Mother did not initially bring suit for any of the purposes provided for in § 36-5-103(c). Father was in arrears on his obligations under the MDA, but not on child support, as child support was not to begin until the marital residence was sold and Mother moved out. *See* n.7, *supra*. Therefore, Mother is not entitled to attorney's fees based on § 36-5-103(c).

Although § 36-5-103(c) does not support an award of attorney's fees to Mother, the parties' MDA clearly does. Therefore, we reverse the trial court's denial of attorney's fees to Mother, and we remand to the trial court for the calculation of Mother's reasonable and necessary fees and costs incurred for the purpose of procuring enforcement of the MDA at the trial level and on appeal.

## IV. CONCLUSION

For the foregoing reasons, we vacate the trial court's denial of Mother's petition for contempt. We reverse the trial court's denial of Mother's request for attorney's fees and costs. The trial court's order is otherwise affirmed. The case is remanded for reconsideration of the question of Father's contempt, for determination of Mother's reasonable trial and appellate attorney's fees and costs, entry of judgment on same, and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Charles Shannon Tigart, for which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
